IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 10, 2010

**STATE OF TENNESSEE v. LINDA F. CATHEY**

**Appeal from the Circuit Court for Humphreys County**
**No. 11752     Larry Wallace, Judge**

**No. M2010-00132-CCA-R3-CD - Filed December 1, 2010**

A Humphreys County Circuit Court jury convicted the defendant, Linda F. Cathey, of one count of theft of property valued at $10,000 or more but less than $60,000, a Class C felony. *See* T.C.A. §§ 39-14-104, -105(4) (2006). The trial court sentenced the defendant to six years' probation and ordered restitution to the victim in the amount of $27,000. On appeal, the defendant argues that the trial court erred by denying her request for judicial diversion, by imposing the maximum sentence of six years, and by ordering restitution without properly considering her ability to pay. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Christopher L. Young, Assistant District Public Defender, for the appellant, Linda F. Cathey.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Lisa C. Donegan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Homer Lee Worley, the victim, testified at trial that he drove long-haul trucks for 48 years. In September 2007, he had known the defendant for approximately one year. Although he and the defendant had shared a brief intimate relationship when they first met, by September 2007, the defendant would clean his house, feed his animals, and perform house-sitting duties while he was away for work. On September 23, 2007, Mr. Worley telephoned the defendant and asked her to meet him at his home while he was on his way through town from a job in Virginia to another job in Texas. He met the defendant on his

front porch, handed her a clothes bag, and asked her to put the bag on his bed.  He told the defendant that he would unpack the bag when he returned home later that week.  Mr. Worley testified that he was in a hurry to begin his travel to Texas and forgot that, in addition to his clothing and shaving kit, the bag also contained "a little over $27,000" which he customarily carried with him on trips in case he needed to make a large purchase.

When Mr. Worley returned home on September 26, he discovered that the clothes bag was missing.  He asked the defendant, who was at his home, where the bag was, and she told him that she did not have it and did not know what he was talking about.  Mr. Worley found the clothes bag in his pick-up truck, but the money was missing from the bag.  Knowing that the defendant had access to both his house key and truck key, he argued with the defendant about the money for over an hour and a half.  The defendant denied all knowledge of the money, so Mr. Worley "called the law."  When the police arrived, the officers took statements from both Mr. Worley and the defendant.

On cross-examination, Mr. Worley admitted that he and the defendant had had a recent disagreement about some of the defendant's personal belongings being missing from his home.  He also acknowledged that he was charged with assaulting the defendant on September 26.  He said that he called Shirley Dennis to ask her about the money because he had heard that the defendant asked Ms. Dennis to retrieve the money for her.  Mr. Worley said that Ms. Dennis told him that the defendant had moved the money.  Ms. Dennis had also been indicted for an unrelated theft, and Mr. Worley said that he was "definitely not" sure whether Ms. Dennis was involved in the theft of his money.

Humphreys County Sheriff's Department Detective Ronnie Toungette had over 31 years' experience in law enforcement with 26 of those years as Sheriff of Humphreys County.  He reviewed the initial statements of the victim and defendant, which were taken on September 26, 2007, concerning the missing $27,000.  The victim's statement was consistent with his testimony at trial.  In the defendant's initial statement to the police, she accused the defendant of being "confused and tired" and denied all knowledge of the clothes bag and the money.  She told the police that "as far as she knew" the victim had placed the clothes bag in the pick-up truck himself and that the money was stolen from there.

The investigation into the loss of the money went unsolved until, on December 20, 2007, the defendant approached Detective Toungette at the courthouse and told him that she "needed to get some things off her chest."  She told Detective Toungette that she was bothered about the missing money.  She admitted to him that she knew about the money and that her previous statement to the police was false.  She told him that the victim gave her the bag and that she removed the money from the bag.  She said that she then wrapped the money in a package and hid it behind the victim's freezer where he could find it later.  The

defendant told Detective Toungette that she telephoned Ms. Dennis and told her the money's location so that Ms. Dennis could let the victim know that it was not missing. When the defendant went to check on the money, however, she discovered it was gone.

Detective Toungette interviewed Ms. Dennis who denied all knowledge of the missing money. For several months, he monitored Ms. Dennis' bank accounts and spending habits and noticed nothing unusual. Similarly, he monitored the defendant's activities and noticed nothing unusual.

The defendant testified that Mr. Worley came home at approximately 3:00 in the afternoon on September 23, 2007, and handed her his clothes bag, which she placed on his bed. She did not go to the victim's home the next day due to doctors' appointments that she kept. On Tuesday, September 25, the defendant unpacked the clothes bag, wrapped the money in a box, taped it closed, and hid it behind the victim's freezer. She said that she was uncomfortable with that much money lying around the house.

On Wednesday, September 26, the victim arrived home and took a nap until approximately 5:00 p.m. When the victim awoke, he began to search for the money. The defendant said that she never intended to take the money but that she was scared to tell the victim that she had moved it because she had "been beaten up by men" before. When the victim called the police, the defendant gave a false statement "just [from] being scared." Because of the domestic assault charge that evening, the police told the defendant not to have any contact with the victim. So the defendant telephoned Ms. Dennis, told her the location of the money, and asked Ms. Dennis to let the victim know where it could be found. The defendant said that telling Ms. Dennis about the money "was a mistake." She recalled seeing Ms. Dennis spending large denominations of money, despite the fact that no one in Ms. Dennis' household was working at the time.

On cross-examination, the defendant said that she did not take the money from the house and that she did not spend any of the money. During her testimony, she recalled for the first time that she initially hid the money in a cabinet and, deciding that the victim would "never find it there," moved the money to behind the freezer when the police arrived. She repeated that she "just got scared. Because [she] could not put [the money] back like [the victim] had it." She admitted that moving the money, even with the police at the home, did not make sense but again said that she was "just so scared." She claimed that she did not get the money out while the police were there because she was "scared of everybody." The defendant also admitted that she thought hiding the money from the victim would force him to return her items that were missing from his home. She said that it never occurred to her to tell the police the location of the money, and she instead sought Ms. Dennis' assistance.

-3-

Based upon this evidence, the jury convicted the defendant of theft of property valued at $10,000 or more but less than $60,000.

The defendant testified at the sentencing hearing that she was 59 years old and received social security disability benefits in the monthly amount of $674. She stated that her testimony at trial was true and apologized for lying to the police when she gave her initial statement. She said that she understood since her conviction that she was responsible for the missing money. She, however, told the victim that she "did not take the money . . . not a penny of it."

On cross-examination, the defendant said that she had last seen the money where she had left it on the back porch behind the freezer. She admitted that she moved the money to the back porch, but she reiterated that she did not take the money from the house. The defendant said that the victim knew who had his money and that "[the thief] spent it on dope and [the victim] knows that." She told the victim, "I did not touch [the money]. I did move it, but I did not take a penny of [the victim's] money. I swear to that."

Regarding her ability to pay, the defendant testified that she still owed about 12 months of $260 payments on the three acres of land and trailer where she lived with her daughter and grandson. She stated that the tax assessment on her property listed its value as $25,000. She said that she owed eight monthly payments on her 2001 Daewoo vehicle and was also a signatory on the loan for her daughter's 1996 Plymouth vehicle. She had no other assets.

At the conclusion of the sentencing hearing, the trial court first discussed the requisite considerations concerning judicial diversion. *See* T.C.A. § 40-35-313. The trial court noted, in favor of granting diversion, that the defendant did not have any criminal history and that she suffered poor physical health. The trial court, however, found that the defendant abused the victim's trust and lacked honesty, specifically stating that the defendant "hasn't come clean fully" regarding her involvement in the offense. Noting the need for deterrence, the defendant's lack of amenability to rehabilitation, and the interests of society, the trial court denied judicial diversion.

Regarding the length and manner of service of her sentence, the trial court found that ordering the defendant to serve the minimum three years' incarceration would not be the "best situation" because the "victim needs . . . to be repaid as much as possible." The trial court found that it would be impossible for the defendant to satisfy any significant portion of restitution within three years, so it imposed the maximum sentence of six years and ordered it served on probation. The trial court ordered restitution in the amount of $27,000 and established an installment structure consisting of payments of $150 monthly for the first

-4-

year and $300 monthly for the second through sixth years. At the conclusion of the six-year probationary term, the trial court ordered the satisfaction of the restitution amount, approximately $7200, to be paid with equity from the defendant's home. The trial court also waived all fines, court costs, and fees associated with the prosecution of the case.

The defendant now appeals the denial of judicial diversion, imposition of the maximum six-year sentence, and order of restitution. She contends that she was not dishonest with the court concerning her role in the offense and that the circumstances of the offense "are not particularly egregious" to warrant a denial of judicial diversion. She contends that the trial court erred in imposing a six-year sentence based solely on the need to pay restitution to the victim. She also argues that the trial court ordered restitution without considering her ability to pay and that the excessiveness of the amount will ultimately lead to her failure to satisfy her probationary conditions. The State argues that although the defendant was eligible for judicial diversion, the record supports the trial court's findings in support of its denial. The State also argues that the trial court imposed the maximum sentence, in part, at the behest of the defendant who indicated a desire to repay the victim for his loss and that the imposition of sentence, including restitution, is supported by the record. We agree with the State and now address each allegation in turn.

The term "judicial diversion" refers to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A) (2006). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Having been convicted of a Class C felony and with no prior criminal history, the defendant was eligible for judicial diversion.

Eligibility, however, does not automatically translate into entitlement to judicial diversion. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). The statute states that a trial court may grant judicial diversion in appropriate cases. *See* T.C.A. § 40-35-313(a)(1)(A) (court "may defer further proceedings"). Thus, whether an accused should be granted judicial diversion is a question entrusted to the sound discretion of the trial court. *Bonestel*, 871 S.W.2d at 168.

"Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial

diversion to analyze cases involving judicial diversion." *State v. Cutshaw*, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997). Accordingly, the relevant factors related to pretrial diversion also apply in the judicial diversion context. They are:

> [T]he defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*Id.* at 343-44; *see also State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993). Moreover, the record must reflect that the trial court has weighed all of the factors in reaching its determination. *Bonestel*, 871 S.W.2d at 168. The trial court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. *Id.*

On appeal, this court must determine whether the trial court abused its discretion in failing to grant judicial diversion. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168. Accordingly, when a defendant challenges the denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168.

Our review of the record shows that the trial court considered all appropriate factors in denying judicial diversion. The trial court determined that the circumstances of the offense, the uncertainty of the defendant's amenability to correction, and the interest of the public outweighed the defendant's poor health and lack of criminal history. The record showed that the defendant violated the victim's trust to deprive him of approximately $27,000. At both trial and sentencing, the defendant failed to take responsibility for her actions and insisted that she had only moved, but not taken, the defendant's money. The trial court acted within its discretion in relying upon these factors in denying diversion, and we will not disturb its holding.

As for the length of the defendant's sentence, the defendant argues that the trial

court erred in imposing the maximum sentence of six years. When considering challenges to the length of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

> In making its sentencing decision, the trial court must consider:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

In the instant case, the trial court considered all relevant factors in determining the six-year sentence. Contrary to the defendant's argument, the trial court found that the defendant violated a position of trust. *See* T.C.A. § 40-35-114(14). Also, as noted correctly by the State, the defendant indicated a desire to repay the victim for his loss and expressed some interest in a longer probationary term in order to accomplish this task. The trial court sentenced the defendant to six years' probation in order to allow the defendant to pay as much restitution as possible. The trial court also indicated that the probationary period may be shortened if the defendant was able to satisfy the restitution order more quickly. We will not disturb the sentence.

As for the amount of restitution ordered, we initially note that restitution is mandated in all theft cases. *See* T.C.A. § 40-20-116(a). Additionally, a trial court may order restitution to the victim of an offense as a condition of probation. *See id.* § 40-35-304(a). "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." *State v. Johnson*, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997). The amount of restitution, however, must be reasonable and need not equal the victim's loss. *State v. Smith*, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). Pursuant to Code section 40-35-304(d), the trial court must consider not only the victim's loss but also the financial resources and future ability of the defendant to pay. *See also State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001). The trial court shall specify the time period for satisfaction of the payment of restitution and may specify a schedule of installment payments in order to satisfy the restitution order. T.C.A. § 40-35-304(c). The court may not, however, establish a payment or schedule extending beyond the expiration of the sentence. *Id.* § 40-35-304(g)(2). If the defendant, victim, or district attorney petitions the trial court, it may hold a hearing and waive or adjust its restitution order as may be appropriate. *Id.* § 40-35-304(f).

The record reflects that the trial court went to great lengths to assess the defendant's ability to pay restitution. At sentencing, the defendant indicated a desire to pay as much restitution as possible within the period of her probationary sentence. The trial court established a payment schedule with consideration of the defendant's ability to pay at the time of sentencing as well as her future ability to pay following the satisfaction of other debts within the first year of her probationary sentence. We conclude that the trial court properly ordered restitution in this case.

Having concluded that the trial court correctly denied judicial diversion and imposed an appropriate sentence and restitution amount, the judgment of the trial court is affirmed.

_____

JAMES CURWOOD WITT, JR., JUDGE