IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 4, 2007

**STATE OF TENNESSEE v. WILLIE McDONALD**

**Appeal from the Circuit Court for Madison County**
**No. 06-451     Donald Allen, Judge**

**No. W2007-01001-CCA-R3-CD   - Filed March 6, 2008**

The defendant, Willie McDonald, entered a best interest guilty plea to possession of marijuana with the intent to "sell/deliver," a Class E felony. Under the terms of his plea agreement, he received a Range I, standard offender sentence of two years on probation. The defendant now appeals the trial court's denial of judicial diversion. We hold that the trial court erred in denying judicial diversion, and we reverse the judgment of the trial court. We remand the case for entry of an order placing the defendant on diversion, provided the defendant is not disqualified pursuant to Tennessee Code Annotated section 40-35-313(a)(3).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed, Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which DAVID G. HAYES and ROBERT W. WEDEMEYER, JJ., joined.

George Morton Googe, District Public Defender, and Greg D. Gookin, Assistant Public Defender, for the appellant, Willie McDonald.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

The record reflects that the petitioner was indicted on two counts, possession of more than .5 ounce of marijuana with the intent to sell (Count 1) and possession of more than .5 ounce of marijuana with the intent to deliver (Count 2), and that the two counts were merged into one conviction. See T.C.A. § 39-17-417. The facts underlying these charges were summarized at the plea hearing as follows:

May the 15th, 2006, officers were looking for a shooting suspect. They knocked on Mr. McDonald's apartment door as well as other apartment doors over on Hollywood Drive. When they knocked on Mr. McDonald's door, he opened the door and the officer immediately smelled marijuana and saw some marijuana sitting on the kitchen table. Mr. McDonald then voluntarily told the officer that he had some more marijuana in the house and showed it to the officer who did then recover that marijuana. I believe that was in a safe area in the house. All of that tested positive. There was also . . . a marijuana cigarette. . . . I believe there were five [cigarettes]. They weighed the marijuana that was loose . . . [and] between the table and the other marijuana that Mr. McDonald voluntarily turned over to law enforcement was 135 grams of marijuana, a Schedule VI controlled substance, as tested positive by the T.B.I. Crime Lab to be marijuana. . . . All of this occurred in Madison County, Tennessee.

The trial court accepted the best interest plea agreement and held a hearing on the issue of judicial diversion.

At the judicial diversion hearing, the defendant testified that he was originally from Chicago, Illinois, and that he came to Tennessee to attend Lane College on a football scholarship in 1998. He said he left the college after one semester because he was not happy there and returned to Illinois. He said he joined the military but was given a medical discharge after being in basic training for six months. He said he also worked while he was in Illinois. He said he returned to Tennessee in 2001 to enroll at Lane College. He said he needed to retake one class in order to graduate, which he planned on doing the upcoming fall semester. He said he had been working before he was arrested and continued working after he was released from jail. He said he worked while he went to school. Before going to jail, he worked at Bruce Hardwood Floors, but he said he was discharged from there for missing workdays due to jail. He said he worked at Royston until a week before the hearing, when he started a new job at Rusken Packaging. He said he worked twelve hours a day, seven days a week at Royston and eight to ten hours a day, five days a week at Rusken.

The defendant testified that he planned to become a physical education teacher and that he had community service experience at an elementary school. He said he would also like to become a coach and worked as a student coach for the baseball team at Lane College. He said he was engaged and planning to marry on January 8, 2008. He said his fiancée would soon graduate from college and hoped to become an assistant manager at Wal-Mart. He said he planned to continue working in Jackson for two years.

The defendant testified that, to his knowledge, he had no criminal convictions in his record other than the current marijuana conviction. He said a charge against him for shoplifting was dismissed in 2001. He said that he had not "touched a drug" since his arrest and that he took and passed drug tests administered through his employer. He said that he moved out of the Brookfield

Apartments, where he was living when he was arrested, and that his parents came from Illinois to help him move. He said his parents are both retired from their professions; his mother was a school teacher and his father repaired computers. He said his parents were a good influence on him. He said that his obtaining diversion and not having a felony conviction on his record was "the difference between [him] teaching and not teaching."

Upon questioning by the court, the defendant testified that he did not complete the courses he needed to graduate because of his demanding work schedule at Royston. He said he had paid fees to the public defender that the court had ordered.

The defendant's fiancée, Tianequa Haywood, testified that she was a student at Union College set to graduate in the upcoming month. She said she and the defendant had dated for over a year and that she was in a managerial internship program at Wal-Mart that she hoped would lead to a position as a manager at the store. She said she would do everything she could to support the defendant's successful completion of judicial diversion. She said the defendant had a good work ethic and had been working since they began dating. She said she would not tolerate the defendant using drugs. She said the defendant had a three-year old son who lived with the boy's mother in Jackson. She said the defendant paid child support, although she did not know how much.

After hearing the testimony and arguments by counsel, the trial court denied judicial diversion. The trial court stated:

> I have heard testimony that he has attended college. He has not quite graduated yet. Apparently only lacks about four hours to graduate, but for whatever reason he was apparently enrolled at Lane College this semester . . . , but apparently he just didn't follow through and didn't obtain four hours in order to graduate from Lane College.
>
> Of course, I do find in his behalf he has been working. He tells me he's been working. He's working about five days a week, 8 to 10 hours a day, which is good. I certainly give that consideration in this case. I believe he testified that he has no prior criminal record other than apparently there was a shoplifting that was dismissed back in 2001. I don't really hold that against him because that was dismissed. I believe also previously he told me under oath that there may have been a violation of bad check law at some point that was also dismissed. You know, relatively has no prior criminal record.
>
> Now, you know, certainly the Court finds that the defendant is amenable to rehabilitation. The State has recognized that. They have agreed to place him on probation for this two year period of time. The question really comes down to whether or not he is an appropriate candidate for diversion.

Given the circumstances the Court has been presented with here in this case, again, you know, a relatively large amount of marijuana that was found there in this apartment which I wouldn't say he has admitted to it, but he has accepted responsibility that this was possessed with intent to sell it or deliver. The Court finds that judicial diversion in this particular case is not in the best interest of the public and would not serve the interest of justice in this case.

I'm just not quite ready to start putting people on judicial diversion for possessing a relatively large amount of marijuana. At least in this case, I just don't feel like Mr. McDonald qualifies for judicial diversion. . . .

On appeal, the defendant challenges the trial court's denial of judicial diversion, arguing that the court did not consider all the relevant factors and improperly denied diversion solely on the basis of the circumstances of the offense. The state counters that the trial court considered relevant factors and did not abuse its discretion in denying diversion.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See T.C.A. § 40-35-313(a)(1)(B). Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. Id. When the probationary period expires, if the defendant has completed probation successfully, then the trial court will discharge the defendant and dismiss the prosecution with no adjudication of guilt. See id. at (a)(2). The defendant may then apply to have all records of the proceedings expunged from the official records. See id. at (b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See id. at (a)(1)(A). Because the decision to grant judicial diversion lies within the sound discretion of the trial court, this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). An abuse of discretion exists if the record contains no substantial evidence to support the denial. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983); Bonestel, 871 S.W.2d at 167.

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); Bonestel, 871 S.W.2d at 168. In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons

for its determinations." Parker, 932 S.W.2d at 958-59. If the trial court "based its determination on only some of the factors, it must explain why these factors outweigh the others." Electroplating, 990 S.W.2d at 229. We also note that "Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion." State v. Cutshaw, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997).

First, we point out that the defendant was convicted of a Class E felony and had no prior felony convictions and thus qualifies for judicial diversion. Second, we note that the trial court did not consider all of the factors listed above, although it did consider some factors that it found to weigh in the defendant's favor, including the defendant's work, amenability to rehabilitation, and lack of a criminal history. However, the trial court still denied judicial diversion based on the circumstances of the offense, particularly the amount of marijuana recovered from the defendant, and, based on this factor, concluded that diversion would not be in the best interest of the public. The trial court did not, however, consider other relevant factors, such as the defendant's social history in general and the deterrence value of denying diversion. Nor do we view the trial court's statements that it was "not quite ready to start putting people on judicial diversion for possessing a relatively large amount of marijuana" to be an adequate explanation of its denial of diversion and, in particular, why this factor outweighed the factors favoring diversion. Therefore, we will conduct a de novo review to determine "whether the trial court reached the correct result notwithstanding its failure to explain its reasoning." Electroplating, 990 S.W.2d at 229.

Several factors weigh in favor of the defendant's request for diversion. The trial court discussed only a few of these, which were that the defendant was working full-time, that he had no prior criminal record, and that he was amenable to correction. Additional facts related to the defendant's social history also support his receiving diversion, including his pending graduation from college and support from his parents and fiancée. The defendant and his fiancée also testified that the defendant had not used drugs since his arrest, and the defendant testified that he passed drug tests for his work and moved away from the environment in which he was living when the offense occurred. In addition, judicial diversion would be sufficient deterrence for the defendant in light of the defendant's plans to become a school teacher and his awareness that a felony conviction, which would result from his inability to successfully complete the diversion program, would halt those plans. The record is silent as to the defendant's physical and mental health, so we give this factor no weight.

The trial court found only one factor that weighed against granting diversion: the circumstances of the offense and, in particular, the amount of marijuana in the defendant's possession when he was arrested. We agree that the amount of marijuana possessed by the defendant weighs against his receiving diversion. However, there are also circumstances of the offense which support the defendant's request for judicial diversion, including that he readily cooperated with police and voluntarily assisted them in seizing the marijuana. Furthermore, while this court has upheld denials of diversion based on the large quantities of drugs involved in the offenses, the amount in the current case–135 grams or approximately 4.7 ounces–is not of such a significant

quantity to outweigh other factors. See State v. Martin Conley, C.C.A. 03C01-9702-CC-00056, Rhea County, slip op. at 5 (Tenn. Crim. App. Mar. 5, 1998) (denial of pretrial diversion proper when based on large quantity of marijuana recovered–nineteen pounds–together with prior criminal history and lack of candor, which suggest a lack of amenability to correction); State v. Don Fleming, C.C.A. No. 01-C-01-9009-CR-00217, Sumner County, slip op. at 2 (Tenn. Crim. App. Apr. 11, 1991) (pretrial diversion properly denied based on district attorney's conclusion that amount of marijuana possessed–three pounds–"was indicative of a significant participation in unlawful drugs" and that "the need for deterrence was compelling"); see also State v. James T. Parks, C.C.A. No. 86-1-III, Rutherford County, slip op. at 2 (Tenn. Crim. App. July 25, 1986) (holding that no substantial evidence supported district attorney's denial of diversion and stating that the amount of marijuana recovered from defendant–three ounces–was "not substantial evidence of more extensive criminality than ha[d] been charged and admitted"). In our view, the ends of justice do not require denying judicial diversion in this case, nor do the negative circumstances of the case outweigh the many other factors in the defendant's favor. See State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) ("while the circumstances of the case and the need for deterrence may be considered as two of many factors, they cannot be given controlling weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors'") (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)); see also State v. Curry, 988 S.W.2d 153 (Tenn. 1999) (agreeing with trial court that prosecutor erred in denying diversion solely on basis of circumstances of the offense, including the large amount of money stolen by defendant and long duration of offense, when several other factors weighed in favor of diversion).

In making these determinations, we note that the evidence in the record comes only from the circumstances of the offense, as announced at the plea hearing, and the testimony of the defendant and Ms. Haywood. However, the state did not question the credibility of these witnesses, nor did the court question their credibility in its findings. Furthermore, we also recognize some weaknesses in the defendant's evidence, particularly as it relates to his college history, which began in 1998 but was not yet concluded at the time of the diversion hearing in 2007. There was evidence that the defendant left college once and later did not graduate when he expected because of poor grades. However, although the trial court noted that the defendant "didn't follow through and didn't obtain" the credits needed to graduate on time, it did not state that this finding was a factor considered in its denial of diversion. Rather, the only factor the trial court expressly considered relative to the denial was the amount of marijuana in the defendant's possession, and we have concluded that this factor is not of such significance as to outweigh other factors.

In light of the number of factors supporting a grant of diversion, we conclude that the defendant is an optimal candidate for judicial diversion. We note, in particular, the defendant's amenability to correction, which the trial court also found. See Curry, 988 S.W.2d at 157 (stating that in deciding whether to grant pretrial diversion, focus should be on defendant's amenability to correction). The record does not contain sufficient evidence supporting the trial court's denial of diversion. We hold that the trial court erred in denying diversion, and we remand the case for an order placing the defendant on diversion, provided a certificate is obtained from the Tennessee

Bureau of Investigation reflecting that the defendant is not disqualified from diversion. See T.C.A. § 40-35-313(a)(3).

We do note, though, that the judgment of conviction entered by the trial court reflects a conviction offense of "poss[ession] of marijuana with the intent to sell/deliver." This, however, is not an offense specified in our Code. Rather, our Code states, "It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with the intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4) (emphasis added). While the judgment of conviction should have reflected the merger of Count 2 with Count 1, it should have stated only one offense, e.g., possession of marijuana with the intent to sell.

Based on the foregoing and the record as a whole, we reverse the trial court's judgment denying judicial diversion and remand the case. Provided that the defendant is not disqualified pursuant to law, the trial court shall enter an order placing the defendant on judicial diversion "on such reasonable conditions as it may require" and for a time period not to exceed the maximum sentence length allowed for a Class E felony. T.C.A. § 40-35-313(a)(1)(A), (a)(3).

_____
JOSEPH M. TIPTON, PRESIDING JUDGE