**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**JULY SESSION, 1997**

FILED

December 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9611-CR-00419** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **SULLIVAN COUNTY** |
| **VS.** | ) | |
| | ) | **HON. FRANK L. SLAUGHTER** |
| **JASON BRADLEY** | ) | **JUDGE** |
| **CUTSHAW,** | ) | |
| | ) | |
| Appellant. | ) | (Aggravated Perjury) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF SULLIVAN COUNTY**

FOR THE APPELLANT:

LESLIE S. HALE
Assistant Public Defender
P.O. Box 839
Blountville, TN 37617

GERALD L. GULLEY, JR.
Assistant Public Defender
P.O. Box 1708
Knoxville, TN 37901-1708

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

GREELEY WELLS
District Attorney General

EDWARD E. WILSON
Assistant District Attorney General
Sullivan County Justice Center
Blountville, TN 37617

OPINION FILED _____

CONVICTION REVERSED; PRESENTMENT DISMISSED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Jason Bradley Cutshaw, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Sullivan County jury of aggravated perjury.[1] The trial court sentenced him as a Range I standard offender offender to four years, the first two of which were to be served on community corrections followed by two years of probation. The trial court also imposed a two thousand dollar ($2,000) fine and ordered the Defendant to perform two hundred (200) hours of community service per year while on community corrections. In this appeal, the Defendant raises four issues:[2]

> (1) That the presentment charging him with aggravated perjury was fatally defective;
> (2) that the evidence was legally insufficient to support the verdict;
> (3) that the trial court erred by refusing to instruct the jury on the lesser included offense of perjury; and,
> (4) that the trial court erred in failing to grant judicial diversion.

After carefully reviewing the record, we conclude that the first issue has merit. Accordingly, we reverse the Defendant's conviction for aggravated perjury and dismiss the presentment against him. We also believe the trial judge abused his discretion by not <u>considering</u> the defendant's eligibility for judicial diversion.

We begin with a summary of the pertinent facts. The record reveals that on the night of March 27, 1993, the home of Robert and Mary Melissa Hatfield located at 2547 Bay Street in Bristol, Tennessee was burglarized. Ralph

---

[1] Tenn. Code Ann. § 39-16-703.

[2] We have chosen to address the issues in a different order than they appear in the Defendant's brief.

Callahan, an officer with the Bristol Police Department, was on a routine patrol that night when he observed an individual near the home at 2547 Bay Street carrying a blanket wrapped around what appeared to be rifles. The barrels of the guns were protruding from one end of the blanket. Officer Callahan decided to investigate the situation and exited his vehicle. As he did so, the individual carrying the blanket dropped the guns and fled. Callahan lost the individual after a short chase.

Officer Callahan then returned to where the individual had discarded the guns. He began to ask questions of the occupants of the homes near the scene. One of these occupants was the Defendant. Callahan asked the Defendant and another occupant of the home, Katherine Leonard, if they had seen the individual carrying the guns and if they knew the identity of that individual. Both the Defendant and Leonard stated that they did not know who the perpetrator was. Callahan then asked them if they would mind traveling to the police station to give statements to the detectives working the case. Leonard and the Defendant agreed to go to the station to give statements.

The Defendant gave a sworn statement in the early morning hours of March 28, 1993, to Bill Smith, a lieutenant with the Bristol Police Department. The statement reads as follows:

> I have known Robert Miller for about four (4) years.. I use [sic] to date his cousin. Late in the night of 3/27/93 I was with this girl that I had met tonight and we were in her car and we picked up Robert Miller at 421 Shopping Center. We were [sic] back to the girl's apartment to party. The girl was driving. We drove to the girl's apartment and we all went inside. We were in the apartment for a few minutes and Robert said that he would be back in a few minutes and he left the apartment. After Robert left the girl found that her car keys were missing. About 10 or 15 minutes after Robert left the

apartment I looked out the window and saw Robert going to the girl's car and he was carrying a blanket with something in it but I could not tell what was in the blanket. I saw the trunk of the car raise and I went outside and asked Robert what he was doing and he said "Shut up and go on." I went on into the house at that time. Just as I was going into the house I saw blue lights and I stayed in the house. Lt. Smith showed me six (6) photos and the photo of Robert Miller is the one that I put my initials on the back of.

The Defendant signed the statement and it was notarized. Lieutenant Smith and Detective George Eden, who was taking the statement of Katherine Leonard, both testified that the Defendant was coherent, did not appear to be intoxicated, and was willing to give a statement. In addition, Lieutenant Smith stated that, prior to taking the statement, he specifically asked the Defendant if he was under the influence of alcohol or drugs. According to Smith, the Defendant responded negatively.

Subsequent to the taking of the statements, police officers searched Katherine Leonard's car with her permission. Because she was unable to locate her keys, officers gained access to the trunk by taking out the back seat. The officers recovered jewelry and other items from the trunk. These items and the guns dropped by the perpetrator as he fled were identified by the Hatfields as having been stolen from their home at 2547 Bay Street. In addition, Mary Melissa Hatfield testified that in the early morning hours of March 28, 1993, the Defendant approached her and stated, "I didn't break into your house, Robert Miller did it."

On April 1, 1993, the Defendant gave a second statement to Captain Don White of the Bristol Police Department. The Defendant's second statement reads as follows:

On Sat. night 3/27/93, I was with Albert Miller and a girl by the name of Kathy. I don't know Kathy's last name, but I know she lived out

near Skate Fun in Bristol, TN. We all had been drinking and after a while we left Kathy's house to go get more to drink. While we were out in Kathy's car we picked up Robert Miller and he went back to Kathy's house with us. Robert Miller was with us for about 10 to 15 mins and then left. After Robert Miller left, Kathy missed her car keys and could not find them. On Sunday morning 3/28/93, Albert Miller called Robert Miller over at Robert's girlfriends [sic] house and ask [sic] him if he had taken Kathy's car keys and Robert said he had the car keys. Me and Albert Miller rode over to see Robert Miller. He was still at his girlfriends [sic] house. When we walked up to Robert Miller, he had Kathy's car keys in his hand, and that is when he gave the keys to Albert Miller and then we left and went back to Kathy's house.

White testified that he detected no odor of alcohol about the Defendant at the time of the second statement.

With this information, Robert Miller was charged with the burglary of the Hatfield residence and tried in the Sullivan County Criminal Court in case numbers S33,609 and S33,610. The Defendant was called as a witness at that trial by the State and testified on July 15, 1993. The Defendant's testimony at Robert Miller's trial was substantially the same as his two statements to the police. He testified that he was with Katherine Leonard, Robert Miller and Albert Miller (Robert Miller's brother) on the evening of March 27, 1993. They had a considerable amount of liquor to drink and eventually went to Leonard's house. The keys to Leonard's car were on top of a television in the house. After a short time there, Robert Miller left the residence. Shortly thereafter, the Defendant saw someone carrying something standing at Leonard's car. The Defendant denied going outside and speaking with the individual at the car. He then saw police officers, and the individual at Leonard's car fled. The next day, when he and Albert Miller went to Robert Miller's girlfriend's home, the Defendant initially testified that Albert Miller walked into the residence alone and returned with Leonard's keys and that he (the Defendant) did not see Robert Miller. On

redirect examination, however, the Defendant admitted that he had seen Robert Miller that morning, but walked out of the home immediately upon seeing Miller.

There were, however, some noteworthy differences between the Defendant's statements to police officers and his testimony at Robert Miller's trial. For instance, in his first statement, the sworn statement given to Lieutenant Smith, the Defendant stated that upon seeing Robert Miller carrying something to Leonard's car, he went outside and spoke with Miller, who told him to "[s]hut up and go on." At Robert Miller's trial, the Defendant denied leaving Leonard's home. The principal difference between the Defendant's statements to police and his testimony at Robert Miller's trial was that he identified Robert Miller as the individual standing at Leonard's car in his first statement but testified at trial that he could not identify the individual standing at Leonard's car.

When confronted with these differences during his testimony at Robert Miller's trial, the Defendant did not deny making the statements to police. Instead, he testified that he was so drunk at the time that he could not remember what he had said to the police officers. When asked about the statement made to Captain White on April 1, 1993, four days after the first statement, the Defendant testified that he was drunk on that occasion as well.

Given these circumstances, on August 23, 1993, the Sullivan County grand jury returned a presentment charging the Defendant with aggravated perjury, alleged to have been committed while testifying at the trial of Robert Miller. The presentment reads as follows:

The Grand Jurors of Sullivan County, Tennessee, duly empaneled and sworn, upon their oath, present that <u>Jason Bradley Cutshaw</u> on the 15th day of July, 1993, in Sullivan County, Tennessee, and before the finding of this Presentment, did unlawfully, feloniously and knowingly while under oath as a witness in a trial in the Criminal Court for Sullivan County, Tennessee, in a case styled <u>State of Tennessee versus Robert B. Miller</u> bearing Sullivan County Criminal Court case numbers S33,609 and S33,610 with intent to deceive, made material false statements in violation of T.C.A. 39-16-703, all of which is [a]gainst the peace and dignity of the State of Tennessee.

The Defendant was tried and convicted as charged on March 8, 1995. He now appeals to this Court, challenging both his conviction and his sentence.

In his first issue on appeal, the Defendant contends that the presentment charging him with aggravated perjury was fatally defective. Prior to trial, the Defendant filed a motion to dismiss the presentment for duplicity. The essence of his argument was that the language of the presentment did not sufficiently specify which statements made by the Defendant at Robert Miller's trial were false, and thus the presentment improperly charged more than one offense in a single count. The trial court denied the motion. The Defendant now raises this issue on appeal, arguing that the presentment was defective in that it did not specify which statements made by the Defendant were allegedly false.

Initially, we note that the State argues on appeal that the Defendant failed to file his motion for new trial in a timely fashion, thereby waiving consideration of the first, third and fourth issues. <u>See</u> Tenn. R. App. P. 3(e). We disagree. Rule 33 of the Tennessee Rules of Criminal Procedure indicates that a motion for new trial should be made in writing, or if made orally, reduced to writing, within thirty days of the date the order of sentence is entered. Tenn. R. Crim. P. 33(b).

Rule 45 of the Tennessee Rules of Criminal Procedure describes the principles governing the computation of time. It provides that

> the day of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office for filing is closed, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, a legal holiday, or a day when the clerk's office for filing is closed.

Tenn. R. Crim. P. 45(a).

In the case sub judice, the order of sentence was entered on April 28, 1995. Thus, the first day of the thirty-day period in which to file a motion for new trial was April 29, 1995. As a result, the thirtieth day of the period was May 28, 1995. May 28, 1995, was a Sunday. Accordingly, under Rule 45(a) of the Tennessee Rules of Criminal Procedure, the last day of the period was extended to Monday, May 29, 1995. May 29, 1995, however, was Memorial Day, a legal holiday. Thus, Rule 45(a) extended the last day of the period to Tuesday, May 30, 1995. The Defendant filed his motion for new trial on May 30, 1995. We therefore conclude that the Defendant timely filed his motion for new trial and has not waived consideration of his first, third and fourth issues on appeal.

We now turn to the merits of the first issue. The law is well-established in Tennessee that an indictment or presentment must provide notice of the offense charged, an adequate basis for the entry of a proper judgment, and suitable protection against double jeopardy. State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); State v. Lindsay, 637 S.W.2d 886, 890 (Tenn. Crim. App. 1982). The indictment or presentment "must state the facts in ordinary and concise language in a manner that would enable

a person of common understanding to know what is intended, and with a degree of certainty which would enable the court upon conviction, to pronounce the proper judgment." Warden v. State, 214 Tenn. 391, 381 S.W.2d 244, 245 (1964); see also Tenn. Code Ann. § 40-13-202.

A lawful accusation is an essential jurisdictional element, and thus, a prosecution cannot proceed without an indictment or presentment that sufficiently informs the accused of the essential elements of the offense. State v. Perkinson, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992); State v. Morgan, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979). A judgment based on an indictment or presentment that does not allege all the essential elements of the offense is a nullity. Warden, 381 S.W.2d at 245; McCracken v. State, 489 S.W.2d 48, 53 (Tenn. Crim. App. 1972).

Aside from the general principles governing indictments and presentments, there is also a statutory provision dealing specifically with allegations of perjury. See Tenn. Code Ann. § 40-13-213. This provision provides that in an indictment or presentment for perjury, it is not necessary to set forth the records or proceedings with which the oath is connected or the commission or authority of the court or person before whom the perjury was committed. Tenn. Code Ann. § 40-13-213(a). The provision continues as follows:

> It is sufficient in such case to give the substance of the controversy or matter in respect to which the offense was committed, in what court or before whom the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned.

Tenn. Code Ann. § 40-13-213(b).

Applying these precepts to the case sub judice, we conclude that the presentment charging the Defendant with aggravated perjury was defective in that it did not sufficiently state the facts constituting the alleged offense. As we set forth above, the presentment alleged only that while under oath as a witness in the trial of Robert Miller, the Defendant knowingly, "with intent to deceive, made material false statements in violation of T.C.A. 39-16-703." This language essentially tracks the statutory elements of the offense of aggravated perjury. See Tenn. Code Ann. § 39-16-703, -702(a)(1). The presentment, however, must not only allege the essence of the criminal offense, but also state which of the Defendant's actions bring him within the statute so as to give him sufficient notice of the facts sought to be proved against him and of what offense he is called upon to answer. See Church v. State, 206 Tenn. 336, 333 S.W.2d 799, 809 (1960) (stating that the description of the offense charged must be sufficient in distinctness, certainty and precision to enable the accused to know what offense he or she is charged with and to understand the special nature of the charge he or she is called upon to answer); see generally David L. Raybin, Tennessee Criminal Practice and Procedure, § 16.19; 14 Tennessee Jurisprudence, *Indictments*, *Informations* and *Presentments*, § 19. In other words, the presentment must state sufficient facts and circumstances as will constitute the offense and not merely a legal result or conclusion. See Warden, 381 S.W.2d at 245; Raybin, *Indictments*, *Informations* and Presentments, supra. We believe that the presentment in the case at bar did not allege sufficient facts to identify the offense for which the Defendant was being prosecuted.

The present case is similar to McLemore v. State, 215 Tenn. 332, 385 S.W.2d 756 (1965). In McLemore, the indictment charged the accused with

-10-

"unlawfully engag[ing] in the business of real estate salesman, without first obtaining a license issued by the Tennessee Real Estate Commission." McLemore, 385 S.W.2d at 756. Our supreme court held that the indictment was deficient because, rather than containing a description of such facts and circumstances as would constitute the offense, it merely stated a legal conclusion. Id. at 757-58. The court concluded that the indictment was not a sufficient charge to place the accused upon notice as to the facts he was called upon to defend. Id.

Likewise, the presentment in the case at bar stated only that the Defendant had made material false statements with the intent to deceive while under oath as a witness at the trial of Robert Miller. We do not believe that this presentment sufficiently identifies "the matter on which the perjury is assigned." Tenn. Code Ann. § 40-13-213(b). By not identifying the allegedly false statements with more certainty, the presentment did not sufficiently place the Defendant upon notice as to the facts against which he was called upon to defend. Accordingly, we can only conclude that the presentment was fatally defective in that it did not allege sufficient facts to identify the offense for which the Defendant was being prosecuted. As a result, we must reverse the Defendant's conviction and dismiss the presentment against him.[3]

In the interest of complete appellate review, we will briefly consider the Defendant's remaining issues even though the first issue is dispositive. In his

---

[3] Although the issue is not before us, we note that it does not appear that double jeopardy principles would bar the State from re-indicting and re-trying the Defendant. See Montana v. Hall, 481 U.S. 400, 402-04, 107 S.Ct. 1825, 1826-27, 95 L.Ed.2d 354 (1987) (double jeopardy does not prevent retrial after a conviction is reversed because of a defect in the charging instrument); see generally Raybin, Tennessee Criminal Practice and Procedure, § 16.117.

second issue, the Defendant argues that the evidence was legally insufficient to support the verdict. He challenges the sufficiency of the evidence in three ways: (1) that the evidence was insufficient to prove that he knowingly testified falsely at Robert Miller's trial; (2) that the evidence was insufficient to prove that any false statements he made at Robert Miller's trial were material; and, (3) that the evidence was insufficient in that it did not negate the defense of retraction.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the

trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The Defendant was charged with aggravated perjury. Aggravated perjury is defined as follows: "A person commits an offense who, with intent to deceive: (1) [c]ommits perjury as defined in § 39-16-702; (2) [t]he false statement is made during or in connection with an official proceeding; and (3) [t]he false statement is material." Tenn. Code Ann. § 39-16-703(a). Tennessee Code Annotated section 39-16-702 defines perjury, in pertinent part, as follows: "A person commits an offense who, with intent to deceive: (1) Makes a false statement, under oath . . . ." Tenn. Code Ann. § 39-16-702(a)(1). "Statement" is defined as "any representation of fact." Tenn. Code Ann. § 39-16-701(4). "Official proceeding" is defined as "any type of administrative, executive, judicial, or legislative proceeding that is conducted before a public servant authorized by law to take statements under oath in that proceeding." Tenn. Code Ann. § 39-16-701(3).

After reviewing the record, we believe that had the presentment properly alleged that the Defendant falsely stated that he could not identify the individual standing next to Katherine Leonard's car as Robert Miller, the evidence presented was legally sufficient to support his conviction. At the trial of Robert Miller, the Defendant testified that he saw "somebody" at Leonard's car. According to the Defendant's testimony, police officers asked him if that individual was Robert Miller, and he replied that he could not be sure because it was dark. In his sworn statement given to Lieutenant Smith in the early morning hours of March 28, 1993, immediately after the incident, the Defendant stated that he did

-13-

recognize the individual at Leonard's car as Robert Miller. Furthermore, the Defendant stated that he exited Leonard's home, approached Robert Miller, and actually spoke with him. Moreover, the State offered the testimony of Mary Melissa Hatfield at the Defendant's trial. Hatfield testified that the Defendant approached her and told her that Robert Miller had burglarized her home.

Of course, the Defendant claimed that he was so drunk at the time of the sworn statement to Lieutenant Smith that he could not remember what he had said. In fact, at his trial he presented testimony from Roy O'Neal, who stated that he observed the Defendant and Robert Miller on the night of March 27, 1993, and that they were highly intoxicated. Yet the State offered testimony from police officers that the Defendant was coherent and cooperative and did not appear to be intoxicated. The resolution of this conflicting testimony was a question for the jury. We believe that a rational juror could have rejected the Defendant's explanation for the statements that contradicted his testimony at Robert Miller's trial and found that the Defendant knowingly testified falsely regarding whether he had seen Robert Miller at Leonard's car on the night in question. Thus, we conclude that the evidence would have been legally sufficient to support the conviction for aggravated perjury had the presentment properly charged the Defendant.

The Defendant also contends that the evidence was insufficient to prove that any false statements he made at Robert Miller's trial were material. He asserts that any discrepancies between his testimony at trial and his statements to police were insignificant. In addition, he argues that the evidence presented

at his trial did not demonstrate that "but for" a change in his testimony, the result of Robert Miller's trial would have been different.[4]

A conviction for aggravated perjury requires that the false statement be material. <u>See</u> Tenn. Code Ann. § 39-16-703(a)(3). The statutory language concerning perjury defines "material" as meaning that "the statement, irrespective of its admissibility under the rules of evidence, <u>could have affected</u> the course or outcome of the official proceeding." Tenn. Code Ann. § 39-16-701(1) (emphasis added). The allegedly false representation made by the Defendant at Robert Miller's trial concerned the identification of Miller as the perpetrator of the burglary of the Hatfield residence. Aside from the Defendant's identification of Miller, the State had no evidence directly linking Miller to the crime. In fact, Detective George Eden specifically stated that it was the Defendant's initial statements to police that developed the case against Miller. Given these circumstances, we believe that the Defendant's failure to identify Robert Miller at trial could easily have affected the outcome of the proceeding. We therefore conclude that there was sufficient evidence presented at the Defendant's trial to establish the materiality of his allegedly false representation that he could not identify the individual at Katherine Leonard's car.

The Defendant also argues that the evidence was legally insufficient in that it did not negate the defense of retraction. He contends that his testimony at Robert Miller's trial constituted a retraction of a previous false statement, namely, his initial statements to police. Thus, he asserts that his conviction cannot stand

---

[4] It appears from the record that Robert Miller was acquitted of the burglary of the Hatfield residence and the theft of their personal possessions.

given the retraction defense available at Tennessee Code Annotated section 39-16-704.

Tennessee Code Annotated section 39-16-704 provides that it "is a defense to prosecution for aggravated perjury that the person retracted the false statement <u>before completion of the testimony at the official proceeding during which the aggravated perjury was committed</u>." Tenn. Code Ann. § 39-16-704 (emphasis added). By its own terms, the retraction defense applies where the aggravated perjury and the retraction occur in the same official proceeding. We do not believe that this defense applies to the situation raised by the Defendant in the present case, that he initially made a false statement to police by identifying Robert Miller and then retracted that statement months later at Robert Miller's trial. Given that we have concluded that the retraction defense was not applicable to the Defendant's case, we need not address whether there was sufficient evidence to negate the defense.

In his third issue, the Defendant argues that the trial court erred by refusing to instruct the jury on the lesser included offense of perjury.[5] The record reveals that the trial court instructed the jury only on aggravated perjury. The trial judge's proposed instructions were made available to counsel prior to his giving the charge. Pursuant to Rule 30 of the Tennessee Rules of Criminal Procedure, the Defendant submitted a special request regarding several definitions involved in the aggravated perjury instruction. He did not submit a request for an instruction on perjury.

---

[5] <u>See</u> Tenn. Code Ann. § 39-16-702.

After the trial court had instructed the jury, the prosecutor mentioned the lack of an instruction on simple perjury. In response, the trial judge commented that "[t]he Court charged that there's one offense indicted and one for which they could hear." Defense counsel then noted an objection under Rule 30(b) of the Tennessee Rules of Criminal Procedure and submitted a handwritten request for an instruction on perjury. The trial court denied the request.

The Defendant now contends that the trial court's refusal to give an instruction on perjury was error. He argues that an instruction on perjury was warranted in that the jury could have concluded that his false statement was the one given to police officers rather than his testimony at Robert Miller's trial. In that case, the false statement would not have been made "during or in connection with an official proceeding" and would therefore not qualify as aggravated perjury. See Tenn. Code Ann. § 39-16-703(a)(2). In addition, he argues that a perjury instruction was warranted because the jury could have concluded that any false statement made at Robert Miller's trial was not "material" and therefore did not qualify as aggravated perjury. See Tenn. Code Ann. § 39-16-703(a)(3).

It is well-established in Tennessee that the trial court has the duty of giving a correct and complete charge of the law applicable to the facts of the case and the defendant has the right to have every issue of fact raised by the evidence and material to the defense submitted to the jury upon proper instructions by the trial court. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990), cert. denied, 498 U.S. 1007, 111 S.Ct. 571, 112 L.Ed.2d 577 (1990); State v. Bryant, 654 S.W.2d 389, 390 (Tenn. 1983); State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975) (citing Poe v. State, 212 Tenn. 413, 370 S.W.2d 488 (1963)). Moreover, a defendant

has a right to a jury instruction on lesser grades or classes or the charged offense as well as all lesser included offenses, if the facts are susceptible of an inference of guilt on any of those offenses. State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); see Tenn. Code Ann. § 40-18-110(a). However, "[w]here the evidence in a record clearly shows the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, the trial court's failure to charge on a lesser offense is not error." State v. Stephenson, 878 S.W.2d 530, 550 (Tenn. 1994); see also State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991).

The Defendant's first contention is that an instruction on perjury was warranted because the jury could have concluded that his false statement was one given to police officers rather than his testimony at Robert Miller's trial. Under the circumstances of this case, we do not believe that this possibility entitled the Defendant to an instruction on perjury. The Defendant's argument ignores the fact that the presentment specifically charged him with making false statements during the trial of Robert Miller. Moreover, the trial court instructed the jury that the "official proceeding" contemplated by the charge of aggravated perjury in this case was the trial of Robert Miller. Thus, if the jury concluded that the Defendant's false statement was one given to police and that he was being truthful at Robert Miller's trial, the jury would have to find him not guilty, given the specific charge in the presentment.

The Defendant's argument would be more persuasive if the presentment had charged him in accordance with Tennessee Code Annotated section 39-16-707. That section provides as follows:

> Inconsistent statements -- Except as provided in § 39-16-704 [the retraction defense], a charge of perjury that alleges the person charged has made two (2) or more statements under oath, any two (2) of which cannot both be true, need not allege which statement is false if both statements were made within the period of the statute of limitations. At trial, the prosecution need not prove which statement is false.

Tenn. Code Ann. § 39-16-707. If the presentment had alleged that the Defendant identified Robert Miller in his initial statement to Lieutenant Smith but during Miller's trial represented that he could not identify the individual standing at Katherine Leonard's car, a jury instruction on perjury might very well have been required. In such a case, if the jury concluded that the testimony at Miller's trial was false and that the false statement was material, the offense would be aggravated perjury because the false statement occurred during an official proceeding. On the other hand, if the jury concluded that the initial statement to police was false, the offense would be perjury because the false statement did not occur during an official proceeding. Thus, given similar facts and circumstances, an instruction on perjury would have been warranted had the presentment followed Tennessee Code Annotated section 39-16-707. Of course, the presentment in the present case did not follow section 39-16-707.

The Defendant's second contention is that a perjury instruction was warranted in that the jury could have concluded that any false statement made at Robert Miller's trial was not "material." We agree that if the jury concluded that any false statement made by the Defendant at Robert Miller's trial was not "material," the Defendant would have been guilty of perjury rather than

-19-

aggravated perjury. See Tenn. Code Ann. § 39-16-703(a)(3), -702(a)(1). Thus, an instruction on perjury might ordinarily have been warranted. Under the facts of this case, however, we do not believe that the trial court's failure to instruct the jury on perjury was error.

As we stated above, we are mindful of the principle that where the record clearly shows that the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, the trial court's failure to charge on the lesser offense is not error. Stephenson, 878 S.W.2d at 550; Boyd, 797 S.W.2d at 593. In the case sub judice, we believe that the record is devoid of any evidence permitting an inference that the Defendant's alleged false statement at Robert Miller's trial was immaterial for purposes of the offense of aggravated perjury.[6] The alleged false statement involved the identification of the accused, Robert Miller, as the perpetrator of the burglary of the Hatfield residence. The Defendant's identification of Robert Miller in his initial statement was a highly significant part of the State's case against Miller and, according to police, played a key role in the development of the case overall. It appears that the Defendant's identification of Miller was the only evidence directly linking Miller to the crime. For purposes of the offense of aggravated perjury, "material" means "the statement, irrespective of its admissibility under the rules of evidence, could have affected the course or outcome of the official proceeding." Tenn. Code Ann. § 39-16-701(1). From these facts, we can only conclude that no rational juror could have found the Defendant's alleged false

_____

[6] As with the second issue, we are addressing this argument with the assumption that the presentment properly charged the Defendant. We are assuming that the false statement of which the Defendant stands accused was his representation that he could not identify the individual standing at Katherine Leonard's car as Robert Miller.

statement to be immaterial. Accordingly, because the record was devoid of any evidence permitting an inference that the Defendant's alleged false statement at Miller's trial was immaterial and therefore constituted only simple perjury, we believe that the trial court did not err in refusing to instruct the jury on that offense.

Even though we have concluded that the trial judge did not err by failing to charge the jury on the lesser included offense, the better practice when the question is close is to charge the lesser included offenses. "However plain it may be to the mind of the Court that one certain offense has been committed and none other, he must not confine himself in his charge to that offense. When he does so he invades the province of the jury, whose peculiar duty it is to ascertain the grade of the offense. However clear it may be, the Court should never decide the facts, but must leave them unembarrassed to the jury." Poole v. State, 61 Tenn. 288, 294 (1872).

In his fourth issue, the Defendant argues that the trial court erred in failing to grant him judicial diversion. The Defendant was convicted of aggravated perjury, a class D felony. Tenn. Code Ann. § 39-16-703(c). He was classified as a Range I standard offender and, thus, the applicable sentencing range was two to four years. Tenn. Code Ann. § 40-35-112(a)(4). The trial court sentenced him to the maximum of four years, the first two of which were to be served on community corrections followed by two years of probation. The trial court also imposed a fine of two thousand dollars ($2,000) and ordered the Defendant to perform 200 hours of community service per year while on community corrections.

The record indicates that at the sentencing hearing, conducted on April 28, 1995, the Defendant requested that the trial court place him on judicial diversion. The trial judge commented as follows:

> Well, what do you say to the proposition that if persons come here and search the records to find out how many people have ever been convicted that lied in court and came up with the conclusion none? I don't grant judicial diversion. I think it's . . . contrary to good order and efficient function of the judicial system.

Defense counsel stated that she wished to file the motion for judicial diversion anyway. The trial judge then denied the motion, briefly noting the pernicious effect of perjury on the criminal justice system and making a vague reference that he "observe[d] from the probation report that this defendant hasn't exactly been a Sunday School teacher."

The sentencing option commonly known as "judicial diversion" is codified at Tennessee Code Annotated section 40-35-313. Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion. For instance, in determining whether to grant pretrial diversion, a district attorney general should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that pretrial diversion will serve the ends of justice and best interests of both the public and the defendant. See State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993); State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983). A

trial court should consider the same factors when deciding whether to grant judicial diversion. See State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993); State v. Anderson, 857 S.W.2d 571, 572-573 (Tenn. Crim. App. 1992). Moreover, a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration. See Bonestel, 871 S.W.2d at 168.

In addition, this Court applies "the same level of review as that which is applicable to a review of a district attorney general's action in denying pre-trial diversion." State v. George, 830 S.W.2d 79, 80 (Tenn. Crim. App. 1992); see also, Bonestel, 871 S.W.2d at 168; Anderson, 857 S.W.2d at 572. In other words, this Court reviews the record to determine whether the trial court abused its discretion. See Bonestel, 871 S.W.2d at 168; Anderson, 857 S.W.2d at 572. To find an abuse of discretion, we must determine that no substantial evidence exists to support the ruling of the trial court. See Bonestel, 871 S.W.2d at 168; Anderson, 857 S.W.2d at 572.

In the case sub judice, the trial judge did not sufficiently explain his reasoning in denying judicial diversion. His cursory denial of the Defendant's request was inadequate in light of the requirements set forth in Bonestel and Anderson. Even more troubling, however, are his initial statements that he did not grant judicial diversion in perjury cases because it was contrary to good order and the efficient functioning of the judicial system. This language is reminiscent of the situation involved in Hammersley.

-23-

In Hammersley, the defendant was denied pretrial diversion. 650 S.W.2d at 353. The record revealed that, although the defendant met the statutory eligibility requirements for pretrial diversion, the district attorney general did not consider his individual characteristics in arriving at the decision to deny diversion. Instead, the district attorney general based the denial on the fact that the defendant stood accused of larceny and that larceny was a serious crime in the county. Id. at 356. In essence, the district attorney general had a blanket policy to deny diversion to those defendants accused of larceny, regardless of their personal characteristics. Id. Our supreme court held that, by failing even to consider the defendant's personal eligibility for pretrial diversion, the district attorney general had abused his discretion. Id. at 356-57.

In the present case, it appears that the trial court denied the Defendant's request for judicial diversion solely because he had been convicted of aggravated perjury. We believe that the trial court failed to consider the personal characteristics of the Defendant. Certainly aggravated perjury is a serious offense that strikes at the heart of the judicial system. See, e.g., State v. Perry, 882 S.W.2d 357, 360 (Tenn. Crim. App. 1994). As such, a conviction for aggravated perjury would in and of itself ordinarily weigh against the granting of judicial diversion. The statutory provisions governing judicial diversion, however, do not exclude defendants convicted of aggravated perjury from consideration. See Tenn. Code Ann. § 40-35-313. As a result, we must conclude that the trial judge abused his discretion by failing even to consider the Defendant's personal eligibility for judicial diversion. Cf. Hammersley, 650 S.W.2d at 356-57. Thus, were we not reversing the Defendant's conviction based on the defective presentment, we would remand this case for a new sentencing hearing.

For the reasons set forth in the discussion above, we conclude that the Defendant's first and fourth issues on appeal have merit. We therefore reverse the Defendant's conviction and dismiss the presentment charging him with aggravated perjury.


_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
THOMAS T. WOODALL, JUDGE


_____
JOHN K. BYERS, SENIOR JUDGE