# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 7, 2011

## STATE OF TENNESSEE v. TRAVIS LURRY

**Direct Appeal from the Circuit Court for Fayette County**
**No. 6350      J. Weber McCraw, Judge**

---

**No. W2010-01932-CCA-R3-CD  - Filed July 12, 2011**

---

The defendant, Travis Lurry, appeals the denial of his request for judicial diversion, arguing that the trial court abused its discretion by improperly weighing the factors for and against diversion.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Kari I. Weber, Assistant Public Defender, for the appellant, Travis Lurry.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley,  Senior Counsel; D. Michael Dunavant, District Attorney General; and Terry Dycus and Joe Van Dyke, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On November 23, 2009, the Fayette County Grand Jury returned an indictment charging the defendant with sexual battery by an authority figure based on his September 9, 2009 sexual battery of his girlfriend's sixteen-year-old daughter, D.H.[1]

At the August 3, 2010 trial, Judy Pinson, a nurse practitioner and the custodian of the records of the Memphis Sexual Assault Resource Center, identified the records of the victim's September 10, 2009 examination at the center and related the narrative history that

---

[1]  In accordance with the policy of this court, we refer to the minor victim by her initials only.

the victim provided to the nurse who conducted the examination. She said that the victim reported that the defendant had "touched and fondled her" since she moved from the Philippines to live with her mother. The victim said that the previous night she had awoken to find the defendant massaging her leg and had then felt him move the massage higher and put his finger inside her. The victim reported that she repeatedly told the defendant to stop and that he did. She said she went back to sleep and that the defendant later climbed on top of her in bed, parted her legs with his legs, and began kissing her. She said she told him to "back off" and he did. The victim reported that she called a friend the next morning, who advised her to tell her mother. Instead, the victim asked the friend to tell her mother for her.

Pinson testified that the examining nurse asked the victim if the defendant had ever put his penis in her vaginal area and the victim reported that he had not. She said that the examining nurse had noted on the report that the victim was trembling and appeared sad during the history portion of the examination. The results of the victim's physical examination were normal.

The victim's mother testified that she had immigrated to the United States from the Philippines in 1994, leaving the victim behind with her grandmother. Her constant goal was to have the victim join her in the United States and in February 2009 the victim finally immigrated, coming to live in the defendant's Fayette County home with the witness, the defendant, whom the witness had not married, the three children the witness and the defendant had had together, and the defendant's daughter from a previous relationship. According to the witness, both she and the defendant acted as parents, exercising authority and discipline, over all the children in the household, including the victim.

The witness testified that when she returned home from work on September 9, 2009, the victim, who was crying in her room, told her that the defendant had put his hands in her private part. She said she twice confronted the defendant that evening, first alone and then with the victim, but the defendant said nothing. She then took the victim to the emergency room of St. Francis Hospital, which referred her to the Memphis Sexual Assault Resource Center. The witness testified that she still loved the defendant, but she believed her daughter.

The victim, who said that she referred to the defendant as her stepfather and called him "Dad," testified that she had gone to bed early on the night of the incident because her leg had been hurting. She said she was asleep sometime after midnight when she awoke to feel someone massaging her leg and then felt a finger inside her vagina. She opened her eyes, saw that it was the defendant, and told him to stop. He stopped and got off the bed and she closed her eyes again, but a minute or two later he got back onto the bed, climbed on top of her, parted her legs with his legs, and began touching her breasts. The victim stated that she then moved to the edge of the bed and the defendant left.

The victim testified that she was frightened and unsure of what to do. The next morning, she called a friend, told her what had happened, and asked her to tell the victim's mother. The friend then told her sister, who in turn informed the victim's mother. The victim stated that the defendant never asked her to do any chores and that she was not upset with him before the incident.

The State's final witness was Investigator David Webb of the Fayette County Sheriff's Department, who described his investigation of the incident and identified the statement he took from the defendant on September 10, 2009. In the statement, the defendant admitted that he had gone into the victim's room and massaged her leg, back, and neck to relieve her stress. He denied, however, that he ever touched her vaginal area or breasts and speculated that the victim might have fabricated the story because she was upset at him for asking her to do some chores. Investigator Webb stated that the defendant was unable to explain why he had chosen to massage the victim at such an early hour of the morning.

The defendant elected not to testify and rested his case without presenting any proof. Following deliberations, the jury convicted him of the indicted offense. The trial court, however, found that the proof was not sufficient to sustain the conviction of sexual abuse by an authority figure. Consequently, the trial court vacated the judgment of the jury, finding the defendant guilty of the lesser-included offense of sexual battery, a Class E felony, and sentencing him to an agreed sentence of two years as a Range I offender, with 180 days to serve and the balance of the time on supervised probation. The trial court denied the defendant's request for judicial diversion. Thereafter, the defendant filed a timely appeal to this court in which he challenges the trial court's denial of his request for judicial diversion.

## ANALYSIS

On appeal, the defendant argues that the trial court abused its discretion in denying his request for judicial diversion by inappropriately weighing the factors for and against diversion. The State disagrees, arguing that there was substantial evidence to support the trial court's denial of diversion. We agree with the State.

Following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2010). A qualified defendant is one who is found guilty or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought, is not seeking deferral of further proceedings for a sexual offense, a violation of section 71-6-117 or section 71-6-119, or a Class A or Class B felony, and who has not been previously convicted of a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i). If the defendant successfully completes the

period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b).

The decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court must consider all of the following factors: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. Id.

The record reveals that the trial court considered and weighed each of the above factors in its determination of whether the defendant should receive judicial diversion. The court noted that the defendant had no criminal record and that there was nothing to indicate to the court that he would not be amenable to correction. The court, thus, found that these factors weighed in favor of granting diversion. Later in its ruling, however, the court recalled that there had been an "issue" since the defendant's arrest that required the court to revoke the defendant's bond, a factor that weighed against the granting of diversion.

As for the defendant's social history and physical and mental health, the court noted that there was no evidence of any drug usage by the defendant, that no evidence had been presented with respect to the defendant's general reputation or his past employment history, and that the victim's mother testified at trial that she still loved him. The court further observed, however, that the defendant's crime had been perpetrated against a child who was a member of his household and that there had been enough of a concern about the defendant's emotional stability that he had undergone a mental evaluation prior to trial. The court, thus, found that these factors weighed against the granting of diversion.

-4-

Finally, the court found that the factors of the circumstances of the offense, the deterrence value to the defendant and others, and whether judicial diversion would serve the best interests of the defendant and the public all weighed heavily against the granting of diversion. The court's ruling states in pertinent part:

> First of all, the circumstances of the offense, certainly this was a sexual battery. By the Court's own motion it was reduced from what the jury found to a lesser sexual battery. The jury found sexual battery by authority figure. The Court did not believe that the testimony substantiated the language in the indictment so found a reduced charge, although the testimony was clear that the child referred to the defendant as Daddy and there was a relationship there, which is of concern to the Court.
>
> . . . .
>
> The Court then looks to the deterrent effect of punishment upon other criminal activity. Again, this is the type of crime that should not be tolerated by any civilized society and whatever this Court needs to do to make the message clear that this type of behavior is unacceptable should be done in the Court's opinion so there needs to be a deterrent effect. To have him walk away without this on his record, the Court believes, based on the facts presented in court, would be a grave injustice.
>
> . . . .
>
> Next, I look to the likelihood that pre-trial [sic] diversion will serve the ends of justice and the best interest of both the public and the defendant. Even though the Legislature believes this is the type [of] crime [for] which diversion could be granted, this Court, based on the testimony, does not see how the ends of justice could benefit the public by having someone inappropriately touching a child being raised in his home. That does not serve the public well, so the Court weighs heavily upon it as well.

The record supports the findings of the trial court. We agree that the factors in favor of the granting of diversion – the defendant's lack of any substantial criminal record and his presumed amenability to correction – are heavily outweighed by the circumstances of his offense, the deterrence value to the defendant and others, and the best interests of the defendant and the public. Although the trial court found that the proof was insufficient to sustain the jury's verdict finding the defendant guilty of sexual battery by an authority figure, the evidence, nevertheless, was that the victim was a child in the defendant's household, that

the defendant exercised discipline over her, and that she referred to him as her stepfather. Moreover, the defendant never expressed any remorse for his behavior and instead accused the victim of fabricating the story out of anger at his exercise of authority. We conclude, therefore, that the trial court did not abuse its discretion in denying the defendant's request for judicial diversion.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE