# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 27, 2013

## STATE OF TENNESSEE v. GRETCHEN ROCHOWIAK

**Appeal from the Criminal Court for Sullivan County**
**No. S58873     R. Jerry Beck, Judge**

**No. E2012-00931-CCA-R3-CD - Filed March 26, 2013**

The defendant, Gretchen Rochowiak, appeals the Sullivan County Criminal Court's denial of judicial diversion for her convictions of conspiracy to introduce contraband into a penal institution and introduction of buprenorphine into a penal institution. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Jim R. Williams, Kingsport, Tennessee (on appeal), and Stephanie A. Sherwood, Blountville, Tennessee (at trial), for the appellant, Gretchen Rochowiak.

Robert E. Cooper, Jr., Attorney General and Reporter; DeShea Dulany Faughn, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In January 2010, the defendant was in a relationship with Leslie Allen Ware, Jr., a prisoner in the Sullivan County jail who was facing charges of felony murder. Ware convinced the defendant to assist him in smuggling buprenorphine, a Schedule III controlled substance, into the jail. The defendant, with the assistance of an accomplice, concealed crushed buprenorphine pills between the front and back of photographs, and at the direction of Ware, the defendant delivered the photographs to Ware's attorneys. The attorneys' private investigator, in turn, delivered the photographs to Ware at the jail on January 11, 2010, so that Ware could review them prior to meeting with a mitigation expert. Neither the attorneys nor their investigator had any knowledge that the photographs contained concealed narcotics.

A correctional officer at the jail realized that the photographs had been altered, and he discovered what appeared to be crushed pills within the photographs. The substance was sent to the Tennessee Bureau of Investigation Crime Laboratory for analysis, and it was determined to be buprenorphine.

After conducting an investigation, the Sullivan County Sheriff's Department spoke with the defendant, and she confessed her involvement in delivering the pills to Ware. As a result of this crime, Ware's capital murder trial, which was set to begin approximately two weeks later, had to be reset; Ware's two attorneys, who had worked on his case for years, were removed, and new counsel had to be appointed; and the private investigator was temporarily barred from the Sullivan County jail until an investigation into his potential involvement in the crime was completed.

The defendant was charged with, and pleaded guilty to, one count of conspiracy to introduce contraband into a penal institution, a Class D felony, and one count of introduction of buprenorphine into a penal institution, a Class C felony. On April 25, 2011, the trial court sentenced the defendant as a Range I, standard offender to concurrent terms of two years on count one and three years on count two, for an effective sentence of three years with all time to be served on probation. In addition, the defendant was ordered to pay a $500 fine, complete ten hours of community service, and testify truthfully against Ware and her co-conspirators. On May 20, 2011, the defendant filed a motion to amend the trial court's judgment, seeking to withdraw her guilty plea and have a hearing on the issue of judicial diversion. The trial court granted the defendant's motion and conducted a hearing on February 16, 2012. At that time, the defendant re-entered her plea of guilty. The court then proceeded with its hearing on the matter of judicial diversion.

At the conclusion of the hearing, the trial court noted, in favor of granting diversion, that the defendant had no criminal record, that she had expressed remorse, that she was physically and mentally healthy, and that she had a strong employment record. The trial court stated that, with the exception of the crime itself, there was "nothing in the presentence report . . . that would prevent" the court from granting judicial diversion. The trial court, however, found that the egregious nature of the crime outweighed all positive factors and denied judicial diversion.

In this appeal, the defendant contends that the trial court abused its discretion by refusing to place her on judicial diversion. The State contends that the denial of diversion was appropriate.

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case.

*See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A).

Eligibility, however, does not automatically translate into entitlement to judicial diversion. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). The statute states that a trial court may grant judicial diversion in appropriate cases. *See* T.C.A. § 40-35-313(a)(1)(A) (citing that court "may defer further proceedings"). Thus, whether an accused should be granted judicial diversion is a question entrusted to the sound discretion of the trial court. *Bonestel*, 871 S.W.2d at 168.

"Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion." *State v. Cutshaw*, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997). Accordingly, the relevant factors related to pretrial diversion also apply in the judicial diversion context. They are:

> [T]he defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*Id.* at 343-44; *see also State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993). Moreover, the record must reflect that the trial court has weighed all of the factors in reaching its determination. *Bonestel*, 871 S.W.2d at 168. The trial court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. *Id.*

On appeal, this court must determine whether the trial court abused its discretion in failing to grant judicial diversion. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871

S.W.2d at 168.  Accordingly, when a defendant challenges the denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168.

In the instant case, the record establishes that the trial court considered appropriate factors in denying judicial diversion.  The trial court determined that the defendant's lack of criminal history, good health and employment record, and demonstrated remorse were outweighed by the circumstances of the offense.  Although the record does not reflect that the trial court considered each and every factor, such as the deterrence value and amenability to correction, the trial court adequately explained why the nature of the crime outweighed all other factors. *See Bonestel*, 871 S.W.2d at 168.  The conduct of the defendant in delivering narcotics to Ware's attorneys and allowing his attorneys and investigator to deliver those narcotics to Ware at the jail seriously jeopardized their careers and professional reputations.  Ware's two attorneys had invested approximately two years of time and money in his defense, but it was all for naught because they were forced to move to withdraw as counsel.  Because this crime was committed a few short weeks before Ware's capital murder trial was to begin, the case had to be reset and new counsel had to be assigned, all of which "wrecked the [trial court's] docket."  Furthermore, the necessity of assigning new counsel who essentially had to start from the beginning in their defense of Ware resulted in "considerable" costs.  These consequences of the defendant's actions were foreseeable.  In sum, although the trial court found that there were many factors weighing in favor of judicial diversion, the court ultimately concluded that the circumstances of the offense outweighed any factors favoring diversion.  The trial court acted within its discretion when making this determination and properly outlined its reasoning in the record. *See Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168.  Moreover, we hold that there is substantial evidence in the record to support the court's finding that the offense committed by the defendant was particularly egregious. *See Bonestel*, 871 S.W.2d at 168.

Accordingly, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-4-