# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 5, 2013

## STATE OF TENNESSEE v. COLLIER SMITH

**Appeal from the Criminal Court for Shelby County**
**No. W12-00380      L.T. Lafferty, Special Judge**

---

**No. W2012-01455-CCA-R3-CD  -  Filed May 16, 2013**

---

The defendant, Collier Smith, pled guilty to statutory rape, a Class E felony, and was sentenced as a Range I, standard offender to one year, suspended to two years probation. On appeal, he argues that the trial court erred in denying his request for judicial diversion. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Leslie I. Ballin and Richard S. Townley, Memphis, Tennessee, for the appellant, Collier Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Amy P. Weirich, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The defendant, a school bus driver, was charged by criminal information with statutory rape based on his sexual contact with a fourteen-year-old girl who rode the bus he drove. At the May 30, 2012 guilty plea and sentencing hearing, the State recited the facts it would have presented had the case gone to trial:

> If the matter had gone to trial, the State would have shown that on February the 4th of 2012, a 14 year old victim reported to the Memphis Police

Department that she and the defendant, Collier Smith, 30 years old[,] had penile/vaginal sex on the backseat of the defendant's vehicle.

The victim stated that the defendant picked her up from her home. They drove to the 1500 block of Drew Street and had sex on the backseat of his vehicle. The defendant is also her school bus driver. After several phone calls from the victim's grandfather, . . ., the defendant . . . took the victim to the Raines Police Station, told her to tell officers that she was a runaway. He was transported to the Sex Crime[s] Bureau, advised of his Miranda Rights and admitted to having sexual intercourse with [the] 14 year old victim. He was placed under arrest and charged with statutory rape.

The defendant, testifying through a deaf interpreter, said that he had been deaf since birth. He said he was a high school graduate and had completed two semesters of college, as well as a diesel mechanic course at a technical school and a truck driving school program. At the time of the offense, the defendant had been working as a school bus driver for about a year and a half. When asked to explain the crime he committed, the defendant testified:

What did I do wrong? Well, I know now she was too young and I feel so very bad about it. I apologize. I just know it will never happen again. I . . . have experienced the hardest time in my life, and I want to – I just – all I can say is I'm so sorry.

. . . .

And, again, I'm so sorry for all of this. And . . . it just will not happen again. I want us all to go on with our lives. And I want to be successful and . . . help out my mother and support my kids. So, anyway, I'm just so sorry about all of this.

The defendant said that his crime was "[his] fault," that he blamed himself, and that he "should have known better." He said that, at the time of the offense, he had been the victim's bus driver for about six months and knew that she was fourteen years old and too young to engage in sexual activity. He denied ever talking to the victim about having sex, saying, "[I]t was her coming to me . . . . And I told her that I'm too old and that I can be your dad." He explained that the victim approached him on the bus and then sent text messages to him when he was off duty, most of which he ignored. He admitted that he and the victim had been texting each other for about two months before the offense occurred.

Regarding the day the offense occurred, the defendant said the victim had been

-2-

"texting all day. I ignore all day. And then I have no reason . . . how it happened but I just want to say I'm sorry." He said the victim "texted and texted and texted again. . . . So I didn't know exactly what she was talking about, so I went to see what was going on. To see if there was anything wrong. Now, I terribly regret doing that." He said that he did not plan to have sex with the victim when he went to her home and that "[i]t just happened." He admitted driving the victim to an elementary school at about 9:30 p.m. and having sex with her in the backseat of his vehicle. Afterwards, the victim refused to go home and kept telling him to take her somewhere else. He talked to the victim's grandfather around 2:00 a.m. who told him to take the victim to her other grandparent's house or to the police station. He eventually took her to the police station at 11:30 a.m. the following morning because she was "wanting to run away." He acknowledged that the victim was with him from 9:30 p.m. until 11:30 a.m. because he "didn't know where to take her."

The defendant said that he wanted to become a truck driver and that he had never been charged with any other offense. He said that he had been married for three years but was currently divorced and had three young children. He was currently living with his parents and two brothers.

Debra Smith, the defendant's mother, testified that the defendant was very remorseful for his crime and that he was "a very good person." She said he would be a good probationer and follow all the rules of probation. She said the defendant was hoping to be hired as a truck driver in order to support his children.

Inez Scott, the victim's grandmother, testified that the victim was living with her other grandparents the night of the offense. The other grandparents called and told her that the victim was missing and called again when the victim was located. Ms. Scott said that she would have taken the victim that night if the defendant had brought her and that, to her knowledge, he never offered to take the victim to her other grandparents' house. When asked if she thought the defendant should receive diversion, Ms. Scott said:

> I don't think that he should get it. For one thing, because he is an adult and . . . he can be in contact with other children if this is diverted from his record. He is a grown man. And it just hurts me to my heart that I have to take my granddaughter to the Rape Crisis Center every week. She will not talk to us about what happened to her. This is a stain on her life what he did to her. He is a grown man.

At the conclusion of the hearing, the trial court denied the defendant's request for judicial diversion and sentenced him to one year, suspended to two years probation. This appeal followed.

**ANALYSIS**

The defendant argues that the trial court abused its discretion in denying his request for judicial diversion by failing to address all of the relevant factors for diversion. The State disagrees, arguing that there was substantial evidence to support the trial court's denial of diversion. We agree with the State.

Following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A). A qualified defendant is one who is found guilty or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought, is not seeking deferral of further proceedings for a sexual offense, a violation of section 71-6-117 or section 71-6-119, or a Class A or Class B felony, and who has not been previously convicted of a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b).

The decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court must consider all of the following factors: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. Id.

Recently, a panel of this court discussed the impact of the supreme court decisions of State v. Bise, 380 S.W.3d 682, 707-08 (Tenn. 2012) and State v. Caudle, 388 S.W.3d

273, 278-79 (Tenn. 2012), on our review of a denial of judicial diversion. See State v. Kiara Tashawn King, No. M2012-00236-CCA-R3-CD, 2013 WL 793588, at *6-7 (Tenn. Crim. App. Mar. 4, 2013). This court noted that "our supreme court has made clear that primary responsibility for determining the appropriate sentence rests with trial courts and that their decisions are presumptively reasonable." Id. at *6. In Kiara Tashawn King, this court held:

> [W]e can reach no conclusion other than that those portions of [State v.] Parker, 932 S.W.2d [945,] 958 [(Tenn. Crim. App. 1996)], Electroplating, and their progeny in which this court reversed a trial court's decision to deny judicial diversion merely because the trial court failed to expressly consider one or more of the seven legally-relevant factors (or merely because it failed to specify why some factors outweighed others) can no longer be considered governing law. Instead, in order to comply with Bise and Caudle, in cases in which a trial court has made a procedural omission in the course of denying judicial diversion, we must in fact apply the standard of review that we have always purported to follow, see Parker, 932 S.W.2d at 958, and uphold the trial court's denial of judicial diversion if we find any substantial record evidence supportive of its decision.

Id. at *7.

The trial court's ruling states in pertinent part:

> Now, your attorney's asked me to put you on diversion. I've looked at the applicable law here. It looks like you're eligible. There's a question in [my] mind whether or not the State could prove that you were a statutory [sic] figure, but based on the record here that I've heard and the Presentence Report, you're a bus driver employed . . . with a contract with Durham Services with Shelby County and the City of Memphis. So you were in a, if not a custodial position, you were in a semi custodial position as a driver taking care of these kids . . . and that's how your contact came with [the victim]. And I glean that you started, probably from the best of your testimony, in September as a bus driver taking these kids back and forth to their homes and this occurred somewhere around February the 4th.
>
> So it looks like a relationship developed somehow between you and the [victim]. Now, I heard the testimony about her texting which maybe it's usual for 14 year olds to do that. I don't know. . . . But it seems to me a man 30 years old, got a good education, you're making something of yourself, that if a young girl is continually texting you, there's an indication something is

wrong.

You either talk to the school authorities or teacher or her grandparents or somebody about what is the problem. Why she keeps calling you for over a week? But on this night in question, you pick her up at 9:30 at night. You take her to an isolated school down there at Coro Lake . . . . Somehow – I believe your testimony is she's the instigator and wants to have sex, jumps over the backseat, takes her clothes off and . . . the opportunity knock[e]th and you accept it. Then you don't take her home. You keep her for up to 11:30 which is almost 15 hours later. And there's questions in the report whether or not you told her to tell the police a lie that she was a runaway or whatever.

I will be perfectly frank with you. I sat here and watched you. You got this disability which I'm in complete sympathy with. I think you tried to make a good living by yourself. But in good conscious based on the facts, I cannot believe that you qualify for Judicial Diversion based on what I've heard in this courtroom under these facts.

But I will put you on probation for two years. And you will seek counseling if you have a problem. You may have a problem. But I suggest the Probation Department will talk to you about if you have a problem.

In its denial of judicial diversion, the trial court explicitly focused on the nature and circumstances of the offense, but its findings can also be read to indicate that it considered the defendant's social history, physical health, and the interests of the public as well. The court's findings also touch on the defendant's truthfulness, and thus his amenability to correction. From these findings, it is clear that the trial court found the nature and circumstances of the offense, the interests of the public, and the defendant's questionable amenability to correction to override the positive factors in the defendant's favor. In addition, we discern a great need for deterrence in keeping individuals responsible for transporting children to and from school from engaging in such inappropriate behavior with those school children. Beginning with the presumption that the trial court's decision to deny judicial diversion was reasonable, we find substantial evidence in the record to support the trial court's decision. We cannot conclude that the trial court abused its discretion in denying judicial diversion.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the

trial court.

_____

ALAN E. GLENN, JUDGE