IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 3, 2014

## STATE OF TENNESSEE v. NARCEUS COX

**Appeal from the Criminal Court for Shelby County**
**No. W13-00594      Paula Skahan, Judge**

_____

**No. W2014-00056-CCA-R3-CD  - Filed October 8, 2014**

_____

The Defendant, Narceus Cox, pleaded guilty to one count of unlawful possession of a controlled substance, Oxycodone, with intent to sell.  The trial court denied the Defendant's request for judicial diversion and sentenced him to a three-year sentence involving split confinement.  The Defendant asserts that the trial court erred when it denied his application for judicial diversion.  After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Leslie I. Ballin, Memphis, Tennessee, for the Appellant, Narceus Cox.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kevin R. Rardin, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

This case arises from the Defendant, a pharmacy technician, stealing 1,200 Oxycodone pills from the pharmacy where he worked.  On December 12, 2013, the Defendant pleaded guilty to one count of unlawful possession of a controlled substance with intent to sell.  At the guilty plea hearing, the State offered the following recitation of the facts in support of the trial court's acceptance of the guilty plea:

[O]n July 12, 2013, the police responded to a complaint at 2525 Horizon Lake Drive. There is a business there know as Excellerx [].

Witness, Human Resources Manager, Tasha Brown would have testified that on July 10th, [the Defendant], an employee, a pharmacy tech[nician] at the company was responsible for stealing twelve-hundred (1200), oxycodone tablets, thirty-milligram (30 mg). And, also something called Malnincrodt, [] one hundred of these. The total value here was three-hundred and forty-five dollars and twelve cents, ($345.12), twelve bottles stolen. Pills were confirmed missing for audit.

Additionally, [the Defendant] was observed on video tape knocking one of the four oxycodone boxes on its side, or placing the box in a black trash bag and leaving the area with the trash bag.

Finding a factual basis for the guilty plea, the trial court accepted the Defendant's plea of guilty to one count of unlawful possession of a controlled substance with intent to sell. The trial court held a sentencing hearing, during which the trial court admitted into evidence the presentence report.

At the sentencing hearing, the Defendant testified that he was twenty-four years old and had graduated from Anthem Career College with a pharmacy technician degree. He agreed that he was working as a pharmacy technician when he committed this crime and that he had a history of criminal activity as a juvenile. He agreed that he committed this crime to make "quick money" because he was "low on funds." The Defendant testified he would not resort to this crime in the future when he needed money. He stated that, since committing the crime and getting fired, he had been working at a "temp-service" for forty hours a week.

The Defendant stated that he was going to sell the stolen Oxycodone pills to a friend in "the neighborhood." The Defendant stated that he wanted this crime "off of [his] record" so he could continue to work as a pharmacy technician. He stated that he had graduated first in his class from technical college.

On cross-examination, the Defendant agreed that it was less than thirty days after he graduated from pharmacy technician school that he stole from the pharmacy. He agreed that he was not able to continue his work as a pharmacy technician because of the crime. The Defendant said he was living with his parents when he attempted to steal the pills and that he was "low on funds" because of credit card bills and student loans.

The trial court denied the Defendant's request for judicial diversion, making the

following statement:

Well, I am opposed to Diversion for [the Defendant].  Considering the presentence report, considering the amenability to correction, we've got a young man, by all accounts, [who] was raised in a good family.  We've got his father here.  I'm sure his mother would be here, if she were able to be here.  She works at St. Jude.  His father has worked hard, had his own business and he's - [the Defendant] has been provided with a good home, good influences, graduated from high school.

Even though, by [the Defendant's] own testimony, he's apparently had some problems in school, sounds like some suspension.  Had several run ins with the Juvenile Court system.  A prior assault in 2004, nine years ago, when he was fifteen, adjusted non-judicially, which means [the Defendant] was counseled and didn't even have to go in front of the Court.

In 2005 it appears he was charged with simple possession of marijuana and public intoxication.  Again, counseled and let go.

Later, in 2005, charged with assault and it appears, simple possession of marijuana, adjusted non-judicially.

In 2007, disorderly conduct, again, counseled and released.

In 2007, six years ago, it looks like he was probably about to turn eighteen (18).

He has some work history.  []  He graduated from Sheffield High School in '08.  [].

So we've got the circumstances of the offense.  We don't have a case where he grabbed, or a situation where he grabbed a box of Oxycodone.  We have a situation where we are talking about twelve-hundred (1200) Oxycodone tablets.  A huge, huge amount, where he was going to earn five to six thousand ($5,000-$6,000) dollars.

Anybody who reads the news understands that it has just become a huge, huge problem in this country with pain pills being abused, pharmacy suppliers constantly being broken into, access gained by whatever methods, including employee theft, providing the public with this insatiable need for

pain medication.

So I do find the circumstances of the offense to be ridiculous and bad.

The [Defendant's] criminal record, while this is his first charge, as an adult, he did have run ins, as a juvenile.

The [Defendant's] social history, I noticed that he states he's told the probation officer that he had never abused, never used illegal substances, but there certainly is an indication from his testimony and from the record from Juvenile Court that he has abused, at least, marijuana in the past.

The status of his physical and mental health. Physical health appears to be fine. Mental health, I've got to question, given his testimony.

But, the deterrence value to the [Defendant] as well as to others, people need to understand that if you steal twelve-hundred (1200) Oxycodone pills from your employer, there is a price to pay and I suspect that this word will get back to people that worked for this business, as well as people in [the Defendant's] neighborhood.

Putting him on Diversion sends a horrible, horrible message and [the Defendant] needs to understand that his criminal behavior is over.

As far as whether it will serve the interest of the public, I think people need to be warned about [the Defendant]. He does not need to serve as a pharmacy [technician], ever, in the future. And this will, at least, provide future employe[r]s with that warning.

So for those reasons, Diversion is denied.

The trial court then sentenced the Defendant to three years as a Range I offender and ordered the Defendant to serve twenty days "at the workhouse" jail followed by two years, eleven months, and nine days of supervised probation. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant argues on appeal that the trial court erred when it failed to consider the relevant factors for decisions involving the grant of judicial diversion. The Defendant asserts

that the trial court failed to "adequately explain" why the circumstances of the offense outweighed the factors in favor of granting judicial diversion and that the trial court failed to "ascribe any weight" to the positive factors. The State responds that the trial court did not abuse its discretion when it denied the Defendant judicial diversion and that the record contains substantial evidence to support the trial court's decision. We agree with the State.

When a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2010). The statute states that a trial court may grant judicial diversion in appropriate cases. *Id.* Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. *Id.* To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> > (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
> >
> > (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
> >
> > (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i). Eligibility does not automatically entitle the defendant to judicial diversion. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). *Id.*

Once a defendant is deemed eligible for judicial diversion, the trial court must consider several factors when deciding whether to grant judicial diversion. Due to the similarities between pre-trial diversion, which is administered by the district attorney general, and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

> [A court] should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of

punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997).

When the trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," then this Court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *State v. King*, 432 S.W.3d 316, 327 (Tenn. 2014). Our Supreme Court has stated:

> Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id*. Failure to consider the common law factors results in loss of the presumption of reasonableness, and this Court is required to conduct a *de novo* review or remand to the trial court for reconsideration. *Id*.

The record in this case demonstrates that the trial court considered the factors and identified those specifically applicable to this case. The trial court considered the Defendant's history with juvenile court and his history of suspensions from school, which included a history of marijuana use, assault, and disorderly conduct, and the prior instances when the Defendant's crimes were disposed of "non-judicially." The trial court then stated that it was considering the circumstances of the particular case, specifically the severity of the crime and the widespread problem of prescription drug abuse, future deterrence from stealing by the Defendant and others, as well as notification to the Defendant's future employers. In considering all the factors, the trial court conclude that the Defendant's theft of 1,200 Oxycodone pills from his employer outweighed the factors favoring the grant of judicial diversion.

Our review of the record reveals that there is substantial evidence to support the trial court's decision. The Defendant had numerous previous "run ins" with the law and had received counseling in those instances. The number of previous offenses supports the trial court's decision that judicial diversion was not appropriate for the Defendant, who had not

demonstrated that he was amenable to correction. Further, the evidence supports that deterrence was a relevant factor in the trial court's decision, considering the number of pills stolen and that the Defendant was in a position of trust as a pharmacy employee. Based upon this evidence, we can not conclude that the trial court abused its discretion in denying the Defendant judicial diversion. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court properly denied judicial diversion and properly sentenced the Defendant. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE