IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2021 Session

## STATE OF TENNESSEE v. CALVIN M. COURTER

**Appeal from the Criminal Court for Davidson County**
**No. 2019-B-1419     Steve Dozier, Judge**

_____

### No. M2020-00470-CCA-R3-CD

_____

The Defendant-Appellant, Calvin M. Courter, pleaded guilty to reckless aggravated assault, see Tenn. Code Ann. § 39-13-102, for which he received a three-year probationary sentence, with an additional 30 days to be served on weekends.  On appeal, the Defendant argues that the trial court erred in denying his request for judicial diversion.  Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Jay Umerley, Nashville, Tennessee, for the Defendant-Appellant, Calvin M. Courter.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jeffrey George, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On January 9, 2020, the Defendant entered an open plea to one count of reckless aggravated assault, a Class D felony.  The underlying facts, as summarized by the State at the plea submission hearing, are as follows:

[O]n March 31st, 2019, the victim and the [D]efendant[,] who were friends[,][1] were at McDonald[']s at 1201 Broadway here in Nashville, Davidson County.  And inside the McDonald[']s[,] they got into a verbal

_____

[1] We note that the Defendant testified at the sentencing hearing that he did not know the victim prior to the assault.

argument[,] which le[]d to the [D]efendant punching the victim . . . in the face[,] causing the victim to fall to the ground, which was witnessed by multiple people inside the McDonald[']s.

The [D]efendant then walked . . . out of the restaurant into the parking lot[,] and the victim got up from the ground and followed him to the parking lot[,] and several of the witnesses, including employees from the McDonald[']s [began] to try to deescalate the situation.

Once outside, the [D]efendant and the victim began to tussle[,] and the [D]efendant hit the victim[,] causing him to fall to his knees. And while the victim was on his knees, the [D]efendant kicked the victim in the face [, causing] him to fall on his back. Multiple witnesses stated that at this point[,] the victim was completely unconscious on the ground. At which point the [D]efendant stomped on the victim's head with his boot[,] which caused the victim to suffer a skull fracture and sever[e] hemorrhage on his brain and that was treated at Vanderbilt Hospital.

The Defendant acknowledged that the facts as recited by the State were "basically true[.]" The sentencing hearing was set for February 20, 2020, "to determine the length and manner of service."

At the sentencing hearing, Randy Russel, the victim's father, testified that the victim suffered a "fractured skull and hemorrhage on the brain[, and] his face was swollen throughout." The victim spent two days in the Intensive Care Unit at Vanderbilt Hospital, and his father testified that the assault "really changed [the victim's] personality" and caused him to have a "fear of coming to Nashville and getting out[.]"

The victim's mother wrote a victim impact statement, which was read into the record. She informed the court that the victim "has had to be on seizure medication" since the assault, and he was "not the same young man [as] he was before this happened[.]"

The presentence report and the preliminary hearing testimony of Mr. Mark Finkle, a witness to the assault, were entered as exhibits. The State then concluded its proof.

Paige Courter, the Defendant's mother, testified that she was "shocked" when she learned what the Defendant had done to the victim. She conceded that she did not know about the Defendant's previous DUI arrests.

- 2 -

Christian Brandt testified that he had known the Defendant "pretty much [his] whole life[.]" He explained that the Defendant lived with him continuously since being released on bond and "would be allowed to . . . continue living there[.]" Mr. Brandt testified that he had not noticed the Defendant's drinking alcohol or staying out late.

The Defendant testified that he first began drinking alcohol at the age of 16 or 17. He affirmed that he had been arrested twice for driving under the influence and was convicted of reckless driving in both instances. The Defendant stated that he was currently employed as a "drive apprentice" for "the second largest food distributor in the country[.]" He explained that he expected to "sign a two[-]year cont[r]act" with the company "for them to send [him] to school and pay for [his] commercial driver's license[.]" He testified that he had not had a drink since the assault and was "volunteering with the counseling center" but was not in counseling. The Defendant spent 102 days in jail before making bond and described it as "unimaginable." The Defendant described the assault as his "overstepping a boundary and clearly making a mistake[.]" He recalled that he initially struck the victim "out of fear" and then "blacked out" from "fear or rage or alcohol[.]"

When asked about judicial diversion, the Defendant testified that the assault conviction should be expunged from his record because he "should be given an opportunity to redeem [himself], show [his] true character and allow [himself] to move forward in [his] life without a single mistake forever holding [him] down and altering [his] life." He further opined that the assault should not remain on his permanent record because he had "no violent record whatsoever" prior to the assault and was "very sympathetic and sorry for what [he] did[.]"

On cross-examination, the Defendant conceded that he was unsure whether the victim ever struck him. He described his state during the assault as a "blackout rage." The Defendant explained that he did not know the victim prior to the assault.

Following the close of all proof, the trial court made the following findings:

The Court's read the presentence report, reviewed the information that the State was submitting. I've heard before when [the Defendant] testified at the bond hearing both here and in sessions. And obviously heard the testimony today.

I mean, this is a reduced charge of reckless aggravated assault where [the Defendant] is looking at two to four years as a range-one offender, what sentence is imposed and how that sentence is served. I do find that the

- 3 -

enhancing factor and personal injuries inflicted upon [the victim] were particularly great beyond that necessary to commit a reckless agg[ravated] assault.

I mean it wasn't—I know the plea bargain process ended up—a reckless agg[ravated] assault. But Mr. Finkle[.] [The victim] that previously testified about what he recalls, it's more than a reckless agg assault and I say that because the appellate courts . . . allow the Court to consider what really occurred factually.

I mean, I can remember hearing Mr. Finkle describe the gurgling blood sounds and being kicked in the head lasting 20 plus seconds. And [the victim] having his hands out in the Jesus position and his head bouncing back and forth off of the pavement. So that enhancing factor is present.

I mean . . . in terms of mitigating factors, [the Defendant] maybe under the catchall provisions has quit drinking, maybe that could be considered, assuming that that's true. There is no proof that it isn't. He hasn't gotten arrest[ed] again. But . . . regardless of what he says about the prior DUIs, he's arrested and plead[ed] guilty to two reckless driving convictions from DUI arrests, been on probation, supposedly gone to DUI school.

So in the Court's opinion[,] he has a drinking problem obviously to the point of blacking out this particular night an[d] inflicting the injuries that [the victim] had. Brain bleed, fractures, blacken[]ed eyes, cuts above his eyes. I mean it's just you know called for obviously and [the Defendant] put himself in that position by thinking he could handle drinking, well, he couldn't. And he's ended up here before a Court because of that.

Thankfully, as Mr. Russell, the father[,] testified and mother by way of a letter, thankfully the witnesses or who[m]ever ran him off and it ended before [the victim] was hurt further. But based on that enhancing factor which is present and sort of meshes into the sentencing considerations under 40-35-102 and then purposes for sentencing, rehabilitation under 102 . . . the Court's going to impose a three-year sentence.

In terms of how that sentence is served, it is [the Defendant's] first felony conviction, and I will get to 40-35-313 here in a moment. But the statute talks about depreciating the seriousness of the offense[,] and [the

- 4 -

Defendant] here today has not tried to do that. But I have to factor in the serious nature of the offense and the sentencing and the 40-35-313, which some—those factors [defense counsel] has mentioned [are] similar to whether its probation or not. But as I've stated, I don't know if he currently has—[the Defendant] currently has an alcohol problem or not, but he had an extensive one in 2019 that le[]d to this horrible incident.

It wasn't a mishap, I think is what [the Defendant] said. He doesn't want to have any more mishaps. That's true, but this was more than a mishap.

. . . .

In terms of the 40-35-313, the Court does not think that this is appropriate based on the nature of the offense and the injuries inflicted on [the victim] that it be removed down the road. I mean, [the Defendant] made the decision to drink and put himself in that position. And he and everybody else needs to know that there [are consequences] as a result of it.

## ANALYSIS

The Defendant asserts that the trial court "denied diversion without identifying which factors it used to render the decision" and "failed to consider the Electroplating factors[.]" The Defendant further requests "a de novo review or a remand." The State responds that the trial court identified the relevant factors in denying judicial diversion and was not required to recite all of the Electroplating factors. The State also asserts that even if this court were to conduct a de novo review, the denial of diversion would still be appropriate based on the trial court's findings. We agree with the State.

In State v. King, 432 S.W.3d 316, 324-25 (Tenn. 2014), the Tennessee Supreme Court held that the abuse of discretion standard of review accompanied by a presumption of reasonableness, which was delineated in Bise and its progeny, applied to appellate review of a trial court's decision to grant or deny judicial diversion. State v. Bise, 380 S.W.3d 682 (Tenn. 2012). However, the court made clear that the application of the Bise standard of review does not abrogate the common law factors for judicial diversion set out in State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996), and State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998).

Tennessee Code Annotated section 40-35-313 outlines the requirements for judicial diversion. A qualified defendant is defined as a defendant who pleads guilty to or is found

- 5 -

guilty of a misdemeanor or a Class C, D, or E felony; is not seeking diversion for a sexual offense or a Class A or B felony; and does not have a prior conviction for a felony or a Class A misdemeanor. Tenn. Code Ann. § 40-35-313(a)(1)(B)(i). After a qualified defendant either pleads guilty or is found guilty, a trial court has the discretion to defer further proceedings and place that defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A). Upon the qualified defendant completing a period of probation, the trial court is required to dismiss the proceedings against him. Tenn. Code Ann. § 40-35-313(a)(2). The qualified defendant may then request that the trial court expunge the records from the criminal proceedings. Tenn. Code Ann. § 40-35-313(b).

The trial court must consider the following factors in deciding whether a qualified defendant should be granted judicial diversion: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the interests of the public as well as the defendant. Electroplating, Inc., 990 S.W.2d at 229 (citing Parker, 932 S.W.2d at 958; State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)). The trial court may consider the following additional factors: "'the [defendant]'s attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.'" State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988) (citations omitted)). The trial court must weigh all of the factors in determining whether to grant judicial diversion. Electroplating, Inc., 990 S.W.2d at 229 (citing Bonestel, 871 S.W.2d at 168). Finally, "a trial court should not deny judicial diversion without explaining both the specific reasons supporting the denial and why those factors applicable to the denial of diversion outweigh other factors for consideration." State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997) (citing Bonestel, 871 S.W.2d at 168).

In King, the court explained how the Bise standard of review is applied to the trial court's consideration of the Parker and Electroplating factors:

> Under the Bise standard of review, when the trial court considers the Parker and Electroplating factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision. Although the trial court is not required to recite all of

the Parker and Electroplating factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the Parker and Electroplating factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

King, 432 S.W.3d at 327 (internal footnote omitted).

In the instant case, the Defendant argues that because he was a "qualified [D]efendant]" for purposes of judicial diversion, the trial court was required to weigh the Electroplating factors "against each other and explain its ruling on the record." Our review of the record reflects that the trial court did consider the Parker and Electroplating factors in denying judicial diversion, and it also considered mitigating factors. Despite the Defendant's complaint that the trial court did not properly weigh the factors against each other and explain its ruling on the record, we note that the trial court is not required to "utilize any 'magic words' or specifically reference the case names 'Parker' and 'Electroplating' when discussing the relevant factors in order to receive the presumption of reasonableness." King, 432 S.W.3d at 327 n.8. Therefore, we afford the trial court's denial of diversion a presumption of reasonableness, and we must only determine wether "any substantial evidence" exists in the record on appeal to support the trial court's denial.

The record reflects that the trial court listened to defense counsel's arguments as to why each of the Electroplating factors favored the trial court's granting the Defendant judicial diverison. In denying diversion, the trial court stated that it had to "factor in the serious nature of the offense and the sentencing and the 40-35-313 . . . those factors that [defense counsel] has mentioned [are] similar to whether it's probation or not." Though the trial court did not utilize "magic words" or reference the Electroplating factors by name, our review of the records reflects that the trial court considered at least factors (2), (3), and (6). In explaining why it was denying diversion, the trial court noted the circumstances of the assault, referencing the victim's head "bouncing back and forth off the pavement" as the Defendant kicked him in the head; that the assault was the Defendant's "first felony conviction," though he had two previous DUI arrests; and explained that the Defendant "and everybody else needs to know that there [are consequences] as a result of" their actions. The trial court also noted "in terms of mitigating factors" that the Defendant's alleged cessation of consuming alcohol could be considered "under the catch all provision[.]"

The record shows that the Defendant became intoxicated and assaulted the victim so severely that he suffered a skull fracture and brain hemorrhage and had to be prescribed anti-seizure medication. The Defendant continued to assault the victim even after he was rendered unconscious. While the trial court did not deny judicial diversion solely because of the circumstances of the offense, the record supports the trial court's decision on this ground alone. See State v. Moore, No. E2014-01790-CCA-R3-CD, 2015 WL 4314107, at *4 (Tenn. Crim. App. July 15, 2015) (affirming the denial of judicial diversion and finding that "[t]he circumstances of the offenses [were] very disturbing and weigh[ed] heavily against judicial diversion"); State v. Parson, 437 S.W.3d 457, 496 (Tenn. Crim. App. 2011) (affirming denial of judicial diversion where Defendant's amenability to correction and the circumstances of the offense "weighed heavily" against judicial diversion despite the satisfactory remaining factors) (citing State v. Jonathan B. Dunn, No. M2005-01268-CCA-R3-CD, 2006 WL 1627335, at *9 (Tenn. Crim. App. June 12, 2006) (affirming denial of judicial diversion where, even though factors (3), (4) and (5) weighed in the defendant's [favor], the circumstances of the offense were "particularly troublesome" where defendant held a gun six inches from the victim's head)); State v. Brian Carl Lev, No. E2004-01208-CCA-R3-CD, 2005 WL 1703186, at *3 (Tenn. Crim. App. Mar. 22, 2005) ("The denial of judicial diversion may be based solely on the nature and circumstances of the offense, so long as all the other relevant factors have been considered, and this factor outweighs others that might favorably reflect on the [defendant]'s eligibility.") (citing State v. Curry, 988 S.W.2d 153, 158 (Tenn. 1999)). We conclude that the trial court properly considered and weighed the Parker and Electroplating factors on the record and accordingly did not abuse its discretion in denying the Defendant's request for judicial diversion. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing reasoning and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE